VIRGIL W. SETTLE, Administrator of Estate of JAMES G. SETTLE, Deceased, Appellant, v. L. W. BALDWIN and GUY A. THOMPSON, Trustees of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation.—No. 39524.—196 S. W. (2d) 299.

Division One, July 8, 1946.

Rehearing Denied, September 9, 1946.

*Clarence C. Chilcott* and *T. W. Imes* for appellant.

*Leslie A. Welch, Richard H. Beeson* and *David P. Dabbs* for respondents.

VAN OSDOL, C.—Action for personal injuries. A jury returned a verdict for plaintiff awarding damages in the sum of $10,000; but the verdict was set aside by the trial court and judgment rendered for defendants, notwithstanding the verdict. Plaintiff (now deceased) appealed.

Plaintiff was an employee of Mountain Ice Company, a wholesaler of ice. When injured, plaintiff was engaged in loading ice manufactured by Ice Company into a car belonging to American Refrigerator Transit Company, a New Jersey corporation.

American Refrigerator Transit Company, hereinafter referred to as ART, was under contract dated January 1, 1925, to furnish a suf-

ficient number of suitable refrigerator cars to defendants-respondents, trustees of the Missouri Pacific Railroad Company, hereinafter referred to as Railroad Company, to enable Railroad Company to accept perishable commodities for carriage on its lines. Under the provisions of the contract, ice-storage houses, ice stations and platforms, elevated tracks, machinery and other appliances, together with the lands upon which the facilities were located, were leased by Railroad Company to ART with a lessee's privilege of subleasing any of the land and the facilities upon the written consent of Railroad Company. By the contract, ART also undertook to perform, "as the agent of the Carrier, all of the services necessary to the effective refrigeration" of perishable commodities transported in the cars of ART or in cars of other ownership in possession of Railroad Company; and ART agreed, "as agent for the Carrier, to furnish ice and salt necessary for the protection of all perishable freight handled by the Carrier." ART had used facilities for the production and storage of ice, and for the icing of refrigerator cars at Leeds (in ▇▇ Kansas City), Jackson County. Other icing facilities were used by ART at Southwest Junction (in Kansas City), Jackson County, and elsewhere. By a tripartite agreement, executed by Railroad Company, ART and Ice Company, dated April 1, 1931, ART subleased to Ice Company the lands on which the facilities at Leeds and Southwest Junction were situate, and sold to Ice Company the buildings and improvements at Southwest Junction. Ice Company undertook to expand facilities at both locations, and to sell and deliver to ART the ice and salt necessary for the proper icing of all cars tendered by Railroad Company for icing. The tripartite contract provided that the ice and salt should be delivered by Ice Company into the bunkers of refrigerator cars at such times, in such quantities, and in such manner as ART should direct; and that Ice Company was to be paid by ART at a stipulated rate per ton for ice and per hundredweight for salt so delivered. Ice Company was "charged with the responsibility of furnishing, at its own expense, all labor, supervision, vehicles, tools and equipment, other than railroad tracks, and the performance of all work in connection with the proper icing and reicing of cars in the manner required by the Refrigerator Company . . ." Subject to certain provisions of the tripartite contract, not material here, Ice Company agreed "at all times during the term hereof to maintain and use Leeds Facilities and Southwest Junction Facilities for and in the manufacture, storage and handling, and as the source of supply, of ice to be sold and delivered by Ice Company and purchased and used by Refrigerator Company for Refrigerator Company's car icing and reicing requirements at Kansas City, as in this agreement provided. All ice for use by Ice Company hereunder, loaded by Ice Company in cars to be furnished by Refrigerator Company at Leeds Facilities, shall be used by Refrigerator Company to be transported,

free of charge, but solely over Missouri Pacific Railroad Company's rails, and at Ice Company's risk, from Leeds Facilities . . . . to Southwest Junction Facilities . . ."

On the day plaintiff was injured, Car No. ART 6423 was set by Railroad Company at Ice Company's docks at Leeds to be loaded with ice to be transported from Leeds to Southwest Junction. Plaintiff, assisted by another, placed a cake of ice on end in the northwest corner of the car. When plaintiff turned to the southeast to assist in upending a second cake, the cake first placed toppled over, falling upon and seriously injuring plaintiff's left leg.

Plaintiff alleged that his injury was due to the dangerous condition of the floor of the car and it was particularly stated by plaintiff that the sides of the car were old, worn, damaged and defective; that the floor was not securely fastened to the sides, was unstable, springy and dangerous; that Railroad Company was a common carrier having the duty to furnish cars for the carriage of commodities tendered for movement; and that Railroad Company negligently delivered the car for the loading of ice to be transported when it knew or should have known the car was unsafe, and negligently failed to inspect the car or warn plaintiff of its defective condition.

Railroad Company answered, alleging the car was not the property of Railroad Company and was not in its service nor furnished by it, but the car was owned by ART which had removed the car from regular commercial service and had placed it in the possession of Ice Company as a subcontractor of ART and for Ice Company's sole and exclusive use in storing ice, in transporting ice, and in icing and re-icing refrigerator cars. It was alleged by Railroad Company that Car No. ART 6423 and other cars so placed in the possession of Ice Company were necessary adjuncts to Ice Company's plant at Leeds and without such cars Ice Company could not distribute its manufactured ice to other facilities, as undertaken by contract; that Ice Company was in exclusive control of Car No. ART 6423 and it was Ice Company's duty to inspect the car; and that Railroad Company had no power, authority or duty to make such an inspection.

Among other grounds upon which the trial court acted in setting aside the verdict and rendering judgment for Railroad Company, the trial court ruled, "it was not shown by the evidence that defendants (Railroad Company) furnished the car in which plaintiff was injured, or that defendants were under any obligation to furnish said car, or under any obligation to inspect the floor of said car, or under any obligation to warn plaintiff or advise him of the condition of the floor of said car." Plaintiff-appellant contends the trial court erred in so ruling. It is argued that Ice Company was a shipper and Railroad Company, a common carrier, had the nondelegable duty to furnish cars reasonably safe and suitable for their intended purpose; that such nondelegable duty of Railroad Company could not be shifted

to another and Railroad Company exempted from liability for failure to perform the duty; and, plaintiff says, the ownership of the car is immaterial. On the other hand, it is contended by Railroad Company that the nondelegable duty to furnish reasonably safe cars obtains only when cargo is to be transported by the carrier as a common carrier; and that such duty does not obtain here, where the ice was not received by Railroad Company for carriage as a common carrier, but was to be transported under the provisions of the tripartite contract for Railroad Company's own use.

Actionable negligence consists in the breach or nonperformance of some duty which the party charged with the negligent act or omission owed to the one suffering loss or damage thereby. Roddy v. Missouri Pac. Ry. Co., 104 Mo. 234, 15 S. W. 1112; 38 Am. Jur., Negligence, sec. 12; 45 C. J. 639. We should endeavor to determine what, if any, duty Railroad Company owed plaintiff. Evidence touching upon the handling and movement of cars in the icing and re-icing service, especially such evidence relating to Car No. ART 6423, will be more particularly examined.

At Southwest Junction, when plaintiff was injured, there was no ice-storage building. Cars were there used to store ice. Ice was taken from storage cars and elevated to an overhead icing dock from which the ice was placed in the bunkers of refrigerator cars. The evidence shows that Car No. ART 6423 had been used in transporting and storing ice since November 20, 1930. It had theretofore been Car No. 10903 when rented to Railroad Company and others for use in perishable freight transportation. The change in the number of the car to the 6000 series was made so that yard clerks and others in handling the car would know it was to be used in the icing service. Such cars "could be used for hauling commercial ice or ice for other companies, but to a very large extent they are used for hauling ice for us (ART) or for our sub-contractor, or for railroad." ART received no revenue for cars in the icing service and no payment was made to Railroad Company for the transportation of such cars. The cars were repaired in the shops of ART. Cars for icing service were set by Railroad Company upon its rails at Ice Company's loading platform at the Leeds plant. Ice was conveyed from the second floor of "daily storage" to an elevated dock and down a spiral elevator to an inclined conveyor upon which the ice moved until it reached a plank which shunted it off onto the loading platform. The momentum of the ice caused it to approach the door of the car set for loading. The loaded cars were moved to Southwest Junction by Railroad Company. According to the testimony of its manager, Wiley M. Hilliard, when Ice Company wanted cars for loading, it would "call up—well, we could get them two places, Missouri Pacific Railway and the American Refrigerator Transit Company." There were plenty of cars at the loading platform for two days prior to the time plaintiff was injured.

The witness, Hilliard, stated the cars were "furnished" by Railroad Company. The witness had also stated, "I don't know who furnished them exactly." The "billing" was by "regular waybills," three copies, on forms furnished by Railroad Company. The cars were billed, Ice Company to Ice Company.

If Railroad Company's relation to Ice Company were that of common carrier to shipper, there could be no question as to Railroad Company's liability to plaintiff for injuries which were a direct result of a negligent failure to furnish a car reasonably safe for plaintiff's use in his employment in loading the car for his employer, the shipper. And if Railroad Company bore the relation of common carrier to plaintiff's employer, a shipper, and was negligent in failing to furnish a reasonably safe car, it would be immaterial that the car furnished was not owned by Railroad Company. It is a common carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. A shipper-employer's duty to provide for the employee a safe place in which to work does not supplant the common carrier's duty. These principles are clearly stated in authorities cited by plaintiff. St. Louis-San Francisco R. Co. v. Ewan, 26 F. 2d 619; Markley v. Kansas City Southern R. Co., 338. Mo. 436, 90 S. W. 2d 409; Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S. W. 723; Hawkins v. Missouri Pac. R. Co., 182 Mo. App. 323, 170 S. W. 459; Vol. 2, Hutchinson on Carriers, sec. 498, p. 543.

Not all transportation by a railroad is in common carrier service. When a railroad is acting outside the performance of its duty as a common carrier, it is dealing with matters subject to ordinary contractual relations. In such special engagements as are not embraced within its duty as a common carrier, although the performance of the engagements may incidentally involve the actual transportation of property, it may employ an appropriate agency, as in the case at bar where Railroad Company employed the services of ART in icing and re-icing refrigerator cars. Santa Fe, P. & P. R. Co. v. Grant Bros. Constr. Co., 228 U. S. 177, 33 S. Ct. 474; and see Ellis v. Interstate Commerce Commission, 237 U. S. 434, 35 S. Ct. 645. The haul of the ice from the facilities at Leeds to Southwest Junction was not a movement under Railroad Company's duty to the public as a common carrier, but was a performance of an undertaking on the part of Railroad Company as provided in the tripartite contract with ART and Ice Company, whereby Railroad Company obtained the services of others in icing and re-icing refrigerator cars. We have seen that there is no substantial evidence to show that the car was actually "furnished" by Railroad Company, except as the cars were furnished by ART under the tripartite contract to which Railroad Company was a party, and Railroad Company moved and set the car upon Railroad Company's tracks. Testimony of the witness

Hilliard that Railroad Company "furnished" the cars was, at best, but a conclusion; especially does such testimony lack substance in view of his statement that he did not "know exactly" who furnished the cars. Nevertheless, Railroad Company had a duty under the facts of the case at bar to exercise ordinary care to ascertain that cars furnished to Ice Company were in reasonably safe condition for loading. As a common carrier, Railroad Company held itself out as a carrier of perishable commodities. Incidental to such carriage it was necessary to ice and re-ice refrigerator cars of perishable freight loaded or in transit on Railroad Company's lines. The icing service could have been performed by Railroad Company; it chose to delegate the performance of such task to ART who entered into a contract which obligated Ice Company to manufacture and sell, and to deliver ice into the bunkers of refrigerator cars on Railroad Company's lines. Railroad Company, a party of this (tripartite) contract, a contract for the mutual benefit of the three parties thereto, contemplated cars were necessary to store and transport ice in the icing and re-icing service; undertook to transport the loaded cars; set the empty cars for loading and, in so doing, had the opportunity to inspect the cars and to select the cars which were reasonably safe for loading; knew it would be necessary for Ice Company's employees to load such cars with ice; knew Ice Company's employees would be subjected to danger if the cars were not reasonably safe for loading; and, in our opinion, when Car No. ART 6423 was set for loading at the loading docks of Ice Company, due care should have been exercised by Railroad Company through its employees, or through ART to whom it had delegated the task of icing cars, to ascertain if Car No. ART 6423 was in reasonably safe condition for loading. See the case of Roddy v. Missouri Pac. Ry. Co., supra, cited by plaintiff. In that case the defendant railway was obligated by contract to set cars (to be loaded with rock) upon the private switch of plaintiff's employer, the superintendent of a quarry. After the empty cars had been placed on the quarry track, they were moved, when necessary, into position for loading by the superintendent of the quarry or his employees. The plaintiff, when so moving cars, was injured because of alleged negligence of defendant railway in furnishing a car with a defective braking appliance. Plaintiff, not a party to the contract, had no right to indemnity for his injuries resulting from the breach of contract between the two contracting parties, the employer and defendant railway. Defendant railway had an obligation under the contract, however—the obligation to supply plaintiff's employer with cars. In the performance of its contractual obligation to provide cars, defendant railway was bound to exercise due care toward those who would necessarily be exposed to risk by its negligent acts in the performance of its contractual obligation. In supplying the cars, defendant railway had the duty to exercise due care in providing cars

which were reasonably safe for use not only by plaintiff's employer but also by plaintiff, inasmuch as the cars were intended for use of the superintendent of the quarry and his employees in discharging his part of the contract. No decisive distinction is seen between the Roddy case and the instant action, although it is seen herein that the cars used in the transportation of ice were those of ART. The Roddy case was discussed and explained in the case of Sykes v. St. Louis & S. F. R. Co., supra. In the latter case it was held that defendant railroad could not be subjected to liability. Defendant railroad was an intermediate carrier in the movement of a car in which plaintiff, consignee's employee, was injured when unloading the car after it had been delivered by the ultimate carrier. As an intermediate carrier defendant railroad did not select and supply the car for shipment, but was obliged to receive the car from a connecting line and haul it and deliver it to another intermediate or to the ultimate carrier, even though the car were unsafe for unloading.

An interesting case is that of Dominices v. Monongahela Connecting R. Co., 328 Pa. 203, 195 A. 747, cited by Railroad Company, where a consignee's employee, plaintiff, was injured in unscrewing a defective safety cap on a tank car used in the transportation of sulphuric acid. The consignee had leased the car from a chemical company; and defendant railroad, a common carrier, hauled the car from consignee's by-products department to consignee's polishing mill (where plaintiff was injured), a distance of about half a mile. The defective cap had theretofore been installed by an employee of the consignee. The Supreme Court of Pennsylvania was of the view that, "In a realistic sense defendant did not 'supply' the defective car; on the contrary the car was supplied by the consignee itself. . . . It would be a strained legalism to import an implied representation by defendant to the consignee that the car was in good condition, when the consignee had itself put the car in bad condition. Nor as far as the consignee's employees are concerned, should defendant be held to have undertaken a duty in regard to them by reason of its having hauled the car from one plant or department of their establishment to another . . . Of course, the railroad company's duty would still remain as to its own employees." We do not comment on the Dominices case except to say it is somewhat akin to the case of Sykes v. St. Louis & S. F. R. Co., supra, wherein, we have noticed, the defendant railroad, an intermediate carrier, did not select or supply the defective car.

It was also stated by the trial court, as grounds for entering judgment for Railroad Company, that the evidence was insufficient to support the verdict; under the evidence the cause of plaintiff's injury is left to speculation and conjecture; plaintiff's claim that the floor sagged down at the northwest corner (of the car) and caused the cake of ice to fall away from the corner is contrary to the law

of physics; and the extent of the movement of the floor, as shown by plaintiff's evidence, was not sufficient to constitute negligence in using the car for the purpose of hauling ice. Plaintiff asserts the trial court erred in so ruling.

In examining these questions the evidence, from a standpoint favorable to plaintiff, relating to the circumstances of the casualty, will be considered. As stated, a cake of ice which plaintiff and one Haney had upended in the northwest corner of Car No. ART 6423 toppled over and fell upon plaintiff's leg. Plaintiff and Haney had set the cake in the corner in the usual and ordinary manner. It appeared to be settled into position when plaintiff turned away. Ordinarily when cakes of ice were set in the corner of a car "they stayed there." A cake of ice weighed 375 pounds and was 52 inches long. "They're sort of in the form of a pyramid." At the large end a cake was 21½″ x 11½″; and at the smaller end 20½″ x 10½″. The cakes of ice were usually placed in the car, nine cakes edgewise across the car's width, "eight of them on the small end and one on the large end, to make them fit tight." Car No. ART 6423 was built as a refrigerator car in 1904. Refrigerator cars were put in the icing service when "they became old." Plaintiff stated that, when lying on the floor of the car after he was injured, he could see daylight between the floor and the wall in the northwest corner of the car, "I would say a foot and a half or two feet along the north wall and . . . about two feet along the west wall." The siding "appeared to be jagged and rotten, like wood that has been rotted with water." After plaintiff was injured, his fellow employee, Haney, and another finished loading the car with ice. Haney observed, "The boards (in the northwest corner of the car), when you set a cake of ice on them, would spring and you would have to hold that cake of ice in that position until it would stop." The floor would "spring down . . . I would say an inch or an inch and a half, possibly. . . . There wasn't anything under the boards in that particular side of the car."

We are not sure the cake of ice placed in the corner of the car upon the springy floor, as detailed by plaintiff's witnesses, could not have fallen away from the walls of the car because of the springy condition of the car's floor. Plaintiff weighed 155 pounds; and Haney, 200. Having placed the cake of ice in the northwest corner of the car, they stepped off the unstable part of the floor. It is not unreasonable to infer that the "sagged" floor then sprung upwardly causing the ice to topple in the manner described by plaintiff's witnesses; and other inferences in harmony with the theory that the springy floor caused the ice to fall might be considered reasonable. So we should not hold the plaintiff's claim that the "sagged" floor caused the ice to topple away from the wall and fall in the manner described by plaintiff's witnesses was contrary to physical laws. Only when it is so clear and irrefutable that reasonable minds could entertain no other conclusion

should a court hold, as a matter of law, that an event could not have occurred in a particular manner. 10 R. C. L. 1009; Clark v. Atchison & Eastern Bridge Co., 324 Mo. 544, 24 S. W. 2d 143; Schlemmer v. McGee, Mo. Sup., 185 S. W. 2d 806. It is urged by Railroad Company that the cake of ice, in being conveyed from storage and shunted onto the loading platform, and in being handled with tongs in loading, could have been so chipped that it could not be upended and steadily placed on the car floor. And it is argued that chips of ice could have caused the ice to topple. No evidence was introduced by plaintiff showing that the small end of the cake, which fell upon plaintiff's leg, was chipped; nor was there evidence that chips of ice were then upon the floor of Car No. ART 6423. And, as seen, there was substantial evidence that the floor of the car was old, springy and unstable. We believe the jury was not obliged to resort to guess, speculation and conjecture in order to return a verdict for plaintiff. And we are of the opinion there was sufficient substantial evidence to support a jury's finding that the car was not in a reasonably safe condition for loading, and that negligence in providing the unsafe car was a cause and a direct cause of plaintiff's injury.

But it is said, even though the trial court erred in setting aside the verdict and rendering judgment for Railroad Company upon the grounds specifically stated, nevertheless Railroad Company should be entitled to judgment on the ground that Railroad Company was a statutory employer of plaintiff under the Missouri Workmen's Compensation Law. It is argued that all liability of Railroad Company was fully discharged by payment of compensation to plaintiff by his immediate employer, Ice Company, and that Railroad Company may not be subjected to liability as a negligent third party. Subsections (a) and (d) of Section 3698, R. S. 1939, Mo. R. S. A. sec. 3698; Pruitt v. Harker, 328 Mo. 1200, 43 S. W. 2d 769; Simpson v. New Madrid Stave Co., 227 Mo. App. 331, 52 S. W. 2d 615; and Atlas Powder Co. v. Hanson, 136 F. 2d 444, are cited. It may here be stated the evidence shows plaintiff had executed final receipt for compensation on his claim for compensation against and his temporary agreement with Ice Company. Railroad Company, Ice Company and plaintiff were all operating under the Workmen's Compensation Law.

In each of the cases cited by Railroad Company it is noted that the statutory employer was one who had engaged an independent contractor to perform work which was an operation of, or in the usual course of, the business which the particular employer customarily carried on. Examine State ex rel. Long-Hall Laundry & Dry Cleaning Co. et al. v. Bland, 354 Mo. 97, 188 S. W. 2d 838. Railroad Company contends, and we will assume, ART was an independent contractor and Ice Company a subcontractor. While it is clear that the icing of refrigerator cars upon Railroad Company's tracks was incidental, ancillary, or auxiliary to Railroad Company's business as a

common carrier, more particularly to a part of Railroad Company's business, the carriage of perishable freight; yet, the icing service was not an operation of Railroad Company's business as a common carrier. And while Railroad Company was capable of performing the work of manufacturing ice and icing and re-icing its refrigerator cars, there was no evidence introduced showing that Railroad Company has customarily carried on this work in the usual course of its business. On the contrary, it may be reasonably inferred from the evidence introduced that, at least since 1925, no regular employees of Railroad Company have been engaged in the work of manufacturing ice or the icing of Railroad Company's refrigerator cars, but that such work has been done under contract by others. The contention is ruled against Railroad Company.

The question of the proper order to be made in disposition of this appeal now confronts us. Should the cause be remanded for a new trial, or should the verdict be reinstated and judgment entered for plaintiff? While the basis of the duty of Railroad Company was not in accordance with plaintiff's theory of a duty to exercise due care arising out of the relation of common carrier and shipper, nevertheless the defendant's duty to exercise due care was the same although the duty arose out of the tripartite contract. The action is upon negligence, the failure to exercise due care. Sufficient facts were stated in plaintiff's petition; sufficient facts were introduced into evidence; and sufficient facts were submitted by instructions upon which to base the duty to exercise due care. A jury has found Railroad Company was negligent and that such negligence was a direct cause of plaintiff's injury. The Raliroad Company was accorded its defenses upon these issues. No good reason, in the interest of justice, occurs to us for another trial of the cause.

The judgment for Railroad Company should be reversed and the cause remanded with directions to reinstate the verdict, and to render judgment for plaintiff in accordance with the verdict.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.

### On Motion for Rehearing.

PER CURIAM.—Defendants have urged on motion for rehearing that Railroad Company's sole and only duty under the tripartite contract was to move the cars used in icing service on Railroad Company's tracks and without charge. It is asserted the obligation to furnish cars was that of ART, an independent contractor, and the contract placed no duty on defendants to furnish or inspect the cars used in icing service; hence there is no ▮▮▮ liability, defendants urge, inasmuch as there was no failure to perform a legal duty. And,

defendants say, our opinion is in conflict with many decisions of this court holding that an owner who has ordinary work done by a *bona fide* independent contractor is not liable for injuries resulting from the negligence of the contractor. The cases of Bass et ux. v. Kansas City Journal Post Co., 347 Mo. 681, 148 S. W. 2d 548; Skidmore v. Haggard et al., 341 Mo. 837, 110 S. W. 2d 726; Coul v. George B. Peck Dry Goods Company, 326 Mo. 870, 32 S. W. 2d 758, are cited.

It is true, as our opinion states, the tripartite contract provided the cars used in icing service should be furnished by ART. And it is true that in treating with defendants' contention that Railroad Company was a statutory employer of plaintiff under the Missouri Compensation Law, we have assumed that ART was an independent contractor and Ice Company a subcontractor. However, from the facts stated in the principal opinion, it is clear that Railroad Company and ART did not contract that the cars were to be moved and set for loading and for storage or unloading at Southwest Junction by the locomotives and on the tracks of ART. These movements were undertaken by Railroad Company. In these respects ART did not undertake to perform work or provide service under the tripartite contract as did the independent contractors in the three cases, supra, cited by defendants. While the language of the tripartite contract providing that ART was to ''furnish'' the car has been emphasized by defendants and urged as determinative that Railroad Company had no legal duty to exercise care in ascertaining that the car was reasonably safe for loading; yet, in our view, the provision of the contract that ART was to furnish the car is not decisive under the facts. The car was furnished in a legal sense, in our opinion, under the contract and the facts as recited in the principal opinion, by Railroad Company with a consequent duty to plaintiff to exercise due care to ascertain that the car was reasonably safe for loading, quite like the legal duty of a carrier to the employee of a shipper.

The motion for rehearing is overruled.