**SHEFFIELD STEEL CORPORATION and Armco Steel Corporation, Appellants,**

v.

**Billy Bob VANCE, Appellee.**
No. 15450.

United States Court of Appeals
Eighth Circuit.
Sept. 18, 1956.

---

1. Weston v. City Council of Charleston, 1829, 2 Pet. 449, 464, 7 L.Ed. 481.

Albert Thomson, Kansas City, Mo. (Davis, Thomson, VanDyke & Fairchild, Kansas City, Mo., on the brief), for appellants.

Robert S. McKenzie, Kansas City, Mo. (Stubbs, McKenzie, Williams & Merrick, Kansas City, Mo., on the brief), for appellee.

Before STONE, JOHNSEN and VOGEL, Circuit Judges.

JOHNSEN, Circuit Judge.

A driver for a trucking company was injured at a steel plant, as a result of a chain slipping on a bundle of iron rods, which was being loaded onto his truck, by means of a crane, for transportation and delivery to one of the steel company's customers. The loading was being done by the steel company's employees, as part of their regular duties, with the truck driver assisting in locating or positioning the bundles upon his truck, as they were lowered by the crane, so that the cargo would be properly balanced.

Claiming that the chain around the particular bundle had been too loosely wrapped and not properly tightened, the truck driver sued the owners of the steel plant (herein referred to as the steel company) in negligence for the injuries he received. On a jury trial, he recovered a verdict and judgment, and the steel company has appealed.

The steel plant involved was located in Oklahoma. The steel company, which was a citizen of Ohio, also had a plant in Missouri, where the action was brought. The truck driver was a citizen of Missouri; the trucking company, which was a certificated contract carrier under state and federal laws, maintained a place of business there; and the driver's contract of employment with the carrier was made in that State. It was stipulated that the steel company and the trucking company were severally, in their respective activities, within the operation of the workmen's compensation laws of both Oklahoma and Missouri.

It further was admitted that the truck driver would in the situation involved have been entitled to claim compensation from his employer under the workmen's compensation law of either of the two States. This was true as to the Oklahoma law, because the injury occurred in that State; the work of the truck driver was covered employment under its statutes; and the accident had been one "arising out of and in the course of his employment". Okla.Stat.1951, Title 85, §§ 2, 11. It was true as to the Missouri law, because of the provision of V.A.M.S. § 287.110(2), which makes the workmen's compensation law of Missouri applicable extraterritorially against an employer as to "all injuries received outside of the state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide." Actually, the driver had claimed and been paid compensation for his injury, by his employer and its insurer, under the Missouri law.

V.A.M.S. § 287.120 makes the provisions of the Missouri Workmen's Compensation Law, in their granting or denying of benefits for employment injuries, exclusive as to rights and liabilities, between an employee and his employer, and also between such an employee and any other person (see § 287.-040) on whom the statute has imposed an obligation, either direct or contingent, in favor of the employee, for the benefits of the law, by virtue of such person's interest in or relation to the particular work being done by the employee at the time of the accident.

Stated differently, § 287.120(1) and (2) precludes an employee, whose work is within the operation of the Missouri Workmen's Compensation Law, from maintaining an action at common law, for injuries occurring within the employer-employee relationship, either as against his immediate employer, or as against any other person whom the statute makes subject to the liability of an employer in the particular situation. But the statute leaves standing the employee's common law rights against all those " 'upon whom no liability could be entailed under the act'," as to the work involved. Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, 918.

The principal contention made by the steel company for reversal is that the trial court erred in holding that it did not have the status of a statutory employer under the Missouri Workmen's Compensation Law in respect to the work in which the truck driver was engaged at the time of the accident. It argues that its situation, as related to the work being done by the driver, was legally within the provision of § 287.040(1), that "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall [secondary to the immediate employer][1] be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business."

The steel company points out that, as set out in the parties' stipulation, the carrier activities of the trucking company were being done for it under a contract relationship; that the contract obligated the trucking company to transport all of the steel company's products

1. Bracket insertion ours.

tendered to it and at an agreed schedule of rates, which the steel company included as a charge in its bill to the customer; that the loading which was being done of the bundles of bars for transportation at the time of the accident took place on the steel company's premises; that such loading of the carrier's truck was one of the steel company's regular operations, because of the need for its crane and other mechanical equipment to accomplish the task; and that the injury of the truck driver had occurred while he was assisting in locating or positioning the load upon the truck.

From this, it is argued that the holding was required as a matter of law that the loading operations were, within the language of the Missouri statute, "an operation of the usual business" which the steel company was carrying on at the plant; that the truck driver, in assisting to locate or position the load upon the truck, was simply engaged in performing part of the steel company's loading operations; that he thus was injured "while doing work which [was] in the usual course of [the steel company's] business"; and that the steel company therefore had the status, under the Missouri Workmen's Compensation Law, of a statutory employer in respect to the injury which the truck driver received, so that he was without any right to maintain a common law action against it for his injury.

The trial court was of the view that the driver's attempt to position the bundle upon the truck, for the purpose of insuring hauling efficiency, public protection, and compliance with load-distribution prescriptions, was distinguishingly a matter done by him for transportation purpose and in carrier function, and not just a part of the physical task being performed by the steel company's employees of getting the bundles onto the truck; that it represented an inherent incident of the trucking or carrier business, beyond the hoisting activity and immediate responsibility of the steel company's employees; and that what the driver was doing was thus, in its significance and relationship, not "an operation of the usual business" of the steel company, within the object of the Missouri statute, when viewed in the light of the facts that the steel company did not purport to be engaged in carrier business or activity but made shipment of all of its products by railroad, truck or other carrier in independent-contractor relationship, and there was nothing to suggest that it was in this respect simply effecting through such independent-contractor relation what it otherwise would have done through employees of its own.

We can not say, on the basis of the Missouri decisions, that this was an erroneous construction and application of the Missouri statute in the situation. The Missouri courts have indicated that work done by one, who is not a direct employee, is not ordinarily to be regarded as an operation of, or in the usual course of, the business which an employer carries on upon his premises, so as to impose upon him the status of a statutory employer with respect to such work, if the work is controllingly "only incidental, ancillary, or auxiliary", and not usual in or directly requisite to the regular carrying on of the particular business. Rucker v. Blanke Baer Extract & Preserving Co., Mo.App., 162 S.W.2d 345, 347; Perrin v. American Theatrical Co., 352 Mo. 484, 178 S.W.2d 332, 334.

At the same time, the decisions have emphasized that this is not an absolute standard for resolving the question of "statutory employer". "The fact is, it is very difficult, and perhaps undesirable, to formulate a generally applicable rule * * * and there is no infallible test. Each case presents its own peculiar difficulties and must be determined upon its particular facts." Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 280, 234 S. W.2d 563, 566; Morehead v. Grigsby, 234 Mo.App. 426, 132 S.W.2d 237, 241.

■ Hence, unless no room for reasonable difference in judgment exists, the question is primarily one for appraisal and resolution by the trier of the facts upon all the elements of the situation presented. Here, as we have indicated, it

seems to us that what the truck driver was doing was sufficiently a matter of separate function and responsibility in carrier business, so that the trial court properly could regard it as involving more than the loading task which the steel company's employees were to perform, and as having an identity and significance, in the purpose which the carrier was to serve, which entitled it to be viewed as a carrier operation and not one of the usual business of the steel company.

The situation is not one, such as in Atlas Powder Co. v. Hanson, 8 Cir., 136 F.2d 444, and Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 280, 234 S.W.2d 563, 566, upon which cases the steel company relies, where an employer, as a matter of convenience, engaged an independent contractor to do work which was inherently and essentially a part of the operations of the usual business which he carried on on his premises, in the sense that, except for the independent-contractor performance, he would naturally in the situation have had the work done through employees of his own.

With the steel company being neither engaged, nor being otherwise required to engage, in carrier operations in order to carry on its steel-products business, and with the work which the driver was doing at the time of the accident being entitled to be found to be carrier incident and function, beyond steel-plant loading task and concern, the court did not err in refusing to accord to the steel company the protection in the present situation of a statutory employer.

But there is another reason also why we would not be willing to hold that the steel company legally was entitled to the status of a statutory employer. It has not demonstrated, and we do not feel that we ought abstractly to assume, because of the importance of the question, that the artificially imposed status of statutory employer under the Missouri Workmen's Compensation Law is capable of being given, or that it was intended to have, application in extraterritorial accidents. The fact appears to be, as pointed out by Mr. Justice Frankfurter, in the course of his dissenting opinion in Carroll v. Lanza, 349 U.S. 408, 425, 75 S.Ct. 804, 813, 814, 99 L.Ed. 1183, that "the Missouri rule [of statutory employer obligation and protection] has only been applied in cases where three pre-conditions were present: (a) all parties were subject to the Missouri workmen's compensation act; (b) the prime and subcontractor were doing business in Missouri; and (c) the injury took place on a project in Missouri."

■ The question whether Oklahoma law and policy, in which State the injury occurred, allows a common law right of recovery by an employee against a third party, where the employee has been paid benefits by his employer under the workmen's compensation law of another State, does not call for any examination here. See generally Carroll v. Lanza, supra, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183. The answer to that question, for purposes of the present case, was inherent in the trial court's holding as to the defenses attempted to be made by the steel company under Oklahoma law. That holding has not been challenged before us, and the question therefore stands as res adjudicata in the situation.

The second contention of the steel company for reversal is that the trial court erred in denying its motion for a mistrial because of improper and prejudicial argument to the jury. Counsel for the truck driver had said to the jury: "Gentlemen, this suit is for $25,000. It is an awful little amount to this (steel company), who isn't interested enough to have somebody sit down here at the counsel table with their lawyer. Their men from Oklahoma (are) not even interested. What is $25,000 to this (steel company)? But, by George, this young man, 29 years old, that has to go through life with this (finger) stump and his maimed hand, and his eye damaged, I say that is a very reasonable sum. Gentlemen, after the Judge charges you, you will go to the jury room and bring in your verdict. Mr. Vance (the plaintiff) and I will be wait-

ing here to greet you and shake your hand."

■ We have emphasized that we will responsibly continue, in the interest of orderly administration of justice, "to do all that reasonably may be done to assure litigants that a trial in a District Court of the United States shall be so conducted that the verdict of the jury fairly may be assumed to be based upon an impartial consideration of the evidence and the applicable law." Kroger Grocery & Baking Co. v. Stewart, 8 Cir., 164 F.2d 841, 845. This, however, does not mean that we will engage in striking down judgments on merely questionable incidents, as against the evaluation made of them by the trial judge at the time and in the setting that they occurred. We will not hesitate to reverse for any flagrant misconduct of counsel, whether in single or cumulative incident, which is deliberately designed to inflame a jury and which is capable generally of having that result. But we will not ordinarily upset a verdict for inadvertent, or provoked, or other zealous argument, which does not impress as having been made in bad faith, unless we have a conviction, from the record as a whole and on the result which was reached, that the jury must, as a matter of sympathy or prejudice, have been materially affected by it, in what it did. Cf. Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 74 F.2d 31, 35.

■ While the argument complained of may perhaps be contended to go a bit beyond the bounds of strict advocacy, it does not fall in the category of flagrant misconduct. And it does not tend to leave us with any conviction that it involved such a type or degree of impetuous unrestraint as to have affected the jury's result. For one thing, the time consumed by the jury in its deliberations and the amount which it returned ($8,500), considered in relation to the injuries submitted by the court's instructions, do not point to the production of any passion or prejudice against the defendant. Nor, in similar vein, do we believe that the jury would regard it as such a compelling treat to have the plaintiff and his lawyer "greet you and shake your hand" that this would prompt it to ignore its oath and responsibility. Federal court jurors, in the care exercised in their selection, can not abstractly be said to be of that general caliber.

The third contention of the steel company is that the court erred in submitting to the jury, and allowing it to award damages for, the partial loss of vision which plaintiff claimed had resulted to one of his eyes.

The immediate injury which plaintiff sustained from the accident was to his hands. Infection, however, set in, in connection with the amputation of one of his thumbs, and the poison thus present in his system was claimed by him to have affected his left eye. He and his wife testified that he had had normal sight and no difficulty of any character with his eye prior to the accident; that immediately after the infection developed in his hand his left eye became inflamed and continued so for several weeks, until the poison in his system cleared up; that the inflammation caused the eye to become filled with matter and required the use of boric acid solution in order to enable him to get it opened in the morning; and that he was left, after the infection and inflammation cleared up, with an impairment of the vision of the eye.

Other evidence showed that, on a physical examination taken by him some months before the accident, as one of the requirements of his job, he had been found to have 20/20 vision, or normal eyesight, in both of his eyes. Similar examination made of him before his return to work after the accident showed that he had only 20/50 vision in his left eye and would require glasses for purposes of his job. His personal doctor testified to the existence of the eye inflammation during the period of the infection. His eye doctor testified that while he could find no indication of other physical injury to the eye, it was possible for the infection to have caused the vision impairment which existed. A medical expert for the steel company testified that infection could cause astigmatism in

the eye but that when this occurred it would result in scars upon the cornea, which plaintiff did not have.

■ We think that on this evidence the trial court was entitled to allow the jury to determine whether plaintiff's impairment of vision was produced by the systemic infection occasioned by his injury. The steel company concedes that it is competent under Missouri law to allow a doctor to testify that a certain physical condition, for which a plaintiff seeks to recover damages, might or could have been caused by the accidental injury which he sustained. But it says that this is not enough to take the question of proximate cause to the jury, without evidence that no other cause might or could equally have produced the condition.

The evidence here of reasonable probability seems to us to be sufficiently substantial in the situation to make the question of probable cause more than a matter of general speculation, such as it was held to be in cases like Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173, Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, and May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830, upon which the steel company relies. It is to be noted that, unlike the situation in those cases, there was evidence competently establishing that the eye condition here involved did not exist before the accident, and that the manifestations, which plaintiff's doctor testified might or could have been responsible for the ultimate condition, followed the accident with such immediacy in time and identifiableness in location as reasonably to suggest relationship to it, on the basis of their medically declared capacity to produce the particular result.

■ The final contention of the steel company that plaintiff should have been held to be guilty of contributory negligence as a matter of law does not require discussion. Whether, as the steel company argues, plaintiff could have seen that the chain was not properly tightened on the bundle, as it was lowered by the crane from above his head, or whether he should in any event have anticipated generally that such a situation might exist, were at most clearly questions for the jury on the circumstances of the situation and not legal absolutes.

Affirmed.