Raymond KIRCH, Appellant

v.

ARMCO STEEL CORPORATION, Appellee.

No. 16305.

United States Court of Appeals
Eighth Circuit.

Jan. 21, 1960.

Ray D. Jones, Jr., Kansas City, Mo., for appellant.

W. H. Hoffstot, Kansas City, Mo., for appellee.

Before GARDNER, WOODROUGH, and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

The controversy in this case is as to the application of the provisions of the Statute of Missouri referred to as section 287.040, V.A.M.S., which substitutes

Workmen's Compensation for the common law right of action for damages for negligence in certain circumstances. The plaintiff was employed as an iron worker by S. Patti Construction Company and that company worked under contracts with the defendant (herein referred to as Armco) on a cost plus percentage basis at the Armco steel production plant in Kansas City, Missouri. Plaintiff suffered personal injuries on June 21, 1954, while he was working at that plant and on October 18, 1957, he brought this action against Armco for damages for his injuries which he attributed to its alleged common law negligence.

The defendant answered that the Missouri statute applied and conferred exclusive jurisdiction of plaintiff's claim upon the Division of Workmen's Compensation of the Department of Industrial Relations of Missouri. At the conclusion of all the evidence on the jury trial of the case the defendant moved for directed verdict in its favor. Ruling was reserved. There was a submission to the jury and a verdict for $25,000.00 was returned in plaintiff's favor. The defendant then moved for judgment notwithstanding the verdict and the court sustained the motion. Judgment of dismissal was accordingly entered accompanied by opinion which is reported at 174 F. Supp. 221. The plaintiff appeals.

The facts upon which the court based decision are stated in the opinion and we find the court's statement to be in accord with the evidence. The only witnesses to the occurrence of plaintiff's accident and the only persons in the vicinity of it were the plaintiff and one Stine who was an iron worker superintendent for Patti working at the Armco plant. On the day of the accident a Mr. White, who was the engineer employed by Armco having charge and supervision of certain work being carried on at the plant in which plaintiff was participating, directed Stine and the plaintiff to go to a building on the plant premises referred to as "Building 12" to get two pieces of machinery which were somewhere in the building and were needed for the work.

The building is large, nearly a block long, entered by railroad and equipped with overhead crane and paved with concrete. It was used by a number of contractors working for defendant for storage of materials bought by defendant and intended for the plant. The pieces the two men were to get had markings for identification and Stine was given a memorandum of them. The intention was that the men and the pieces should be transported by an independent trucking contractor doing such work for Armco under contract. If the crane was required it would be operated in the building by Armco's crane operator.

Stine and plaintiff found one of the required pieces by hunting through the building. It was flat on the floor and as it was too heavy for them to lift the plaintiff pried it up with block and pinch bar to put a block under it and make space for the cable to pass under and around the piece to hook to the crane. He was working close to a metal guard which was standing on the concrete floor. The guard was designed to cover a wheel of a machine and protect against contact with the wheel. It was about three feet in diameter at its widest, tapering to about 24 and 18 inches, kind of pear shaped, open on one side and solid on the other and estimated to weigh about 180 to 200 pounds. It toppled over and struck plaintiff on his left foot causing him serious injury. Though plaintiff with his pinch bar must have been immediately adjacent within touching distance of the guard (less than the three feet of its diameter) he had not paid attention to it nor seen it and did not know what caused it to fall or where it was when it fell except that it struck his foot with the solid side. The trial was nearly five years after the accident and he may have forgotten details. Stine was looking about for the other piece he had come to get and had his back turned towards plaintiff and the guard when it fell. He testified the guard must have been standing on its edge on the concrete floor "or it would not have fell". It was about two feet from his heel after it fell over.

He said "It didn't look like it was going to fall to me." There was no description of the edge of the guard on which it was standing and no testimony as to whether or not the edge was wide enough or fit to support it in the upright position.

Plaintiff rested his case on the doctrine of res ipsa loquitur. The court entertained serious doubt that the essential elements of the doctrine had been proved but deemed consideration of the point unnecessary "since plaintiff [was found to occupy] the position of a 'statutory employee' of defendant within the meaning of Section 287.040, subd. 1, * * * and his sole right against Armco Steel Corporation is under the Missouri Workmen's Compensation Law".

In reaching that conclusion the court set forth the relevant provisions of the Missouri Act and upon considering the provisions and the Missouri cases interpreting and applying them to cases where an employee of a contractor was injured when working for a principal employer declared that "The issue disputed is whether under existing [Missouri]. law the work being performed was in the course of the usual business carried on at the Sheffield Plant." The court considered it to be settled that "If under controlling Missouri law plaintiff was a 'statutory employee' of Armco * * * [his rights] at common law [were] barred. * * *" and "that the conditions enumerated by Section 287.040, subd. 1 must exist; * * * the work must be under contract, on or about the premises of the purported employer, and the work being performed at the time of the injury must be in the usual course of business which is there carried on." See cases cited on page 223, 174 F.Supp.

It is clear that Patti's work here relevant was done under contract with Armco and on Armco's premises so that the same disputed issue is presented here that was passed on by the District Court. Appellant's contentions here are in substance that the court erred in concluding that the work in which plaintiff was engaged at the time of his injury was an operation of the usual business carried on by defendant at its Sheffield division within the meaning of section 287.040, subd. 1, and was not governed by subd. 3 of that section.

It is agreed that as stated by the court "In its final analysis each case of this nature presents a question of fact" and to get at the fact the court undertook to "determine the scope of the usual business of the employer" (Armco) and then to "ascertain whether the work being performed by plaintiff at the time of his injury was within the sphere of that activity."

It was shown that the Armco plant was a very large enterprise. Its ultimate object was the manufacture of steel products but as stated by the court: "To hold that the scope of the usual business there conducted is limited solely to the manufacture of steel would be illogical. Improvement and repair are an integral part of the process." At the time of plaintiff's accident and "[a]t least since 1942, a continual process of enlargement, alteration, repair and remodeling has been conducted there" and the Patti Construction Company under its contracts with Armco supplied the services of its employees in that work continuously for many years. In June, 1954, Patti had some sixty or seventy employees working at the plant who were of various crafts and Armco had men of the same crafts working together on the same jobs in many instances. None of Patti's men worked directly at processing steel and Armco had many employees as to whom that was equally true. But "the working relationship between Patti and Armco was very close." The evidence indicated that Patti operated almost as a department of Armco and that it functioned with its organization "as a supplement to the steel plant." The work required of Patti was written up on a work order form identical to that used by departments of Armco, and "Armco compensated Patti monthly for all work done on a cost of operation plus percentage basis."

The court described the particular work at the plant in which plaintiff was participating as "the modernization of an old billet mill. One side of this mill remained in operation while the other side was torn out to install a blooming mill. The purpose was to increase production facilities. The work was in close proximity to the production line which remained operating, necessitating close coordination. Armco employees tore out and removed the old equipment while Patti men constructed walls, footings and foundations, and set the new machines. The project engineer for Armco was in charge of the construction, and supervised the installation of the new equipment."

The court considered both the project in which plaintiff was employed at Armco and his particular task at the time of his injury and reviewed the Missouri cases dealing with the question whether or not the work being performed by an injured plaintiff was in the course of usual business carried on by defendant. It concluded that only a general guide to the answer to the question was provided by the decided cases. Instead of adopting a fixed formula the court chose to rely upon "decided case law that most closely corresponds to the problem under consideration." The court found close analogy, between the facts passed on by this Court in Atlas Powder Co. v. Hanson, 8 Cir., 136 F.2d 444, and the case at bar. Although that decision was not rendered by the Missouri Court it has been cited there without criticism in Montgomery v. Mine La Motte Corp., Mo.1957, 304 S.W.2d 885, and Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299. See also 150 A.L.R. 1217, 1231 and 1237, notes.

We do not find that the court was in error as to the Missouri law applicable to the facts presented. The plaintiff was not engaged at the time of his injury in a "specialized, sporadic maintenance activity" at the Armco plant. His immediate task of obeying the Armco engineer's direction to assist in finding and bringing a piece of Armco machinery to where it was needed was such a task as the engineer might call on almost any common workman in the plant to perform and Armco employed other iron workers. The conclusion that the work in which plaintiff was engaged at the time of his injury was an operation of the usual business there carried on by defendant was not erroneous.

The appellant contends here as he did in the District Court that the work being done at Armco at the time of his injury was an improvement within the meaning of section 287.040, subd. 3, but we are in accord with the conclusion of the District Court, that "The admitted facts disclose a situation clearly within the meaning of subsection 1 of the statute. Under established law subsection 3 is not applicable."

Appellant has cited the following Missouri cases not discussed by the District Court as being in conflict with its decision. Wooten v. Youthcraft Mfg. Co., Mo., 312 S.W.2d 1; Lawrence v. William Gebhardt, Mo.App., 311 S.W.2d 97; Szofran v. Century Electric Co., Mo.App., 255 S.W.2d 443; Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299; State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838; Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628; and Kemper v. Gluck, 327 Mo. 733, 39 S.W.2d 330. But our examination of these and other Missouri cases has not persuaded us that the Supreme Court of Missouri would have reached decision contrary to that now before us on the same facts. Appellant also relies on the decision of this Court in Sheffield Steel Corp. v. Vance, 8 Cir., 236 F.2d 928. In that case we held that an employee of a trucking company which was a certificated carrier and was under contract with the steel company to do its hauling was not a statutory employee within the meaning of subd. 1 of the section of the Missouri statute here involved. The plaintiff truck driver suing Armco for damages for personal injuries in that case was doing work in the course of loading a truck with Sheffield products which was a

"carrier function" and which "entitled it to be viewed as a carrier operation and not one of the usual business of the steel company." Page 932 of 236 F.2d.

We find the judgment appealed from to be without reversible error. It is accordingly in all respects

Affirmed.