**Beulah WICHMANN, Appellee,**

v.

**UNITED DISPOSAL, INC., Appellant.**

**No. 76–1354.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1977.

Decided April 7, 1977.

Richard O. Funsch, St. Louis, Mo., for appellant; John E. Heater, St. Louis, Mo., on the brief.

Kenneth J. Heinz, St. Louis, Mo., for appellee; David G. Dempsey and James F. Koester, St. Louis, Mo., on the brief.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, Chief District Judge.[*]

GIBSON, Chief Judge.

In this diversity case, initially filed in state court, plaintiff Beulah Wichmann seeks damages for personal injuries sustained in a collision between her automobile and a truck owned by defendant United Disposal. At trial, the jury found that United Disposal's employee, who was driving the truck, had negligently caused the accident and awarded Wichmann $25,000. Judgment was entered accordingly by the District Court[1] and United Disposal appeals.

On June 26, 1973, between 10:00 p. m. and 10:30 p. m., Wichmann was driving her automobile in a northward direction on Interstate 70 in St. Louis, Missouri. There had been a heavy rain in the area, causing the road surface to be slippery. While trav-

---

[*] The Honorable William C. Hanson, Chief Judge for the United States District Court for the Southern District of Iowa, sitting by designation.

[1] The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern and Western Districts of Missouri.

eling in the right, or curb lane, Wichmann observed two automobiles in front of her to be either moving slowly or completely stopped. Traffic in the adjacent left lane precluded Wichmann from passing the automobiles; therefore, she applied the brakes and slowed from 30–35 miles per hour to 10–15 miles per hour.

Bill Yelverton, an employee of United Disposal, was following Wichmann's automobile in a United Disposal truck at a speed of approximately 35 miles per hour. Yelverton observed the Wichmann automobile and other slow moving vehicles in his lane and attempted to pass the vehicles in the left lane. However, he was unable to pass them because an automobile cut off his access to the left lane. Yelverton had then proceeded to a point where a rear-end collision with Wichmann's automobile appeared inevitable. In an attempt to avoid a collision he swerved into the safety lane to the right of the main traffic lanes of the Interstate highway. Yelverton temporarily lost control of the truck when it struck the curb in the safety lane and a collision with Wichmann's automobile resulted.

■ United Disposal initially contends that reversible error was injected into the trial when, in closing argument, Wichmann's counsel requested the jury to award Wichmann $18,000 for lost wages. In Missouri, lost wages are items of special damages and, as such, must be specially pleaded. *Hicks v. Shanabarger*, 241 Mo.App. 476, 236 S.W.2d 49, 54–55 (1951). Wichmann's failure to incorporate a prayer for lost wages in her final amended petition[2] foreclosed her opportunity to recover a jury award for lost wages. Accordingly, it was improper for Wichmann's counsel to argue the issue of lost wages to the jury. However, United Disposal failed to object to this aspect of closing argument or to move for a mistrial. Nor was this alleged prejudicial error presented in United Disposal's motion for a

new trial. The failure to properly preserve this alleged error is fatal to United Disposal's contention. *A. B. McMahan Co. v. Amphenol Corp.*, 443 F.2d 1072, 1077 (8th Cir. 1971).

■ "[C]ounsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that the comments to the jury were improper and prejudicial." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238–39, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940); *accord, Thomson v. Boles*, 123 F.2d 487, 495 (8th Cir.), *cert. denied*, 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1204 (1941). However, in "extraordinary situations," *Hawkins v. Missouri Pacific Railroad*, 188 F.2d 348, 352–53 (8th Cir. 1951), a reviewing court will reverse a judgment based upon errors not objected to at trial in order to prevent a plain miscarriage of justice. *Hormel v. Helvering*, 312 U.S. 552, 558, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *O'Malley v. Cover*, 221 F.2d 156, 159 (8th Cir. 1955).

Considering the nature and context of the reference to lost wages in the closing argument of Wichmann's counsel, we fail to find that United Disposal was materially prejudiced by the comment or that a miscarriage of justice resulted. The objectionable comment by Wichmann's counsel was isolated and not reflective of the quality of the entire closing argument. *See Juaire v. Nardin*, 395 F.2d 373, 377–78 (2d Cir.), *cert. denied*, 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 274 (1968). There is no claim or supportable inference that the reference to lost wages was actuated by bad faith. *See Sheffield Steel Corp. v. Vance*, 236 F.2d 928, 933 (8th Cir. 1956). United Disposal's plea of prejudice is weakened by the fact that, after failing to object to the closing argument of Wichmann's counsel on this point, counsel for United Disposal highlighted the

---

**2.** Prior to removal of this action from a Missouri Circuit Court, Wichmann incorporated a request for $424 in lost wages into her first amended petition. Subsequently, Wichmann filed a second amended petition which did not contain a claim for lost wages. Missouri law

provides that a litigant, by filing an amended petition, abandons all matters in a prior petition which are not restated in the amended petition. *Laux v. Motor Carriers Council of St. Louis, Inc.*, 499 S.W.2d 805, 809 (Mo.1973).

issue of lost wages by advising the jury that there was no factual basis for such an award. Furthermore, counsel for both Wichmann and United Disposal presented some evidence during the trial bearing at least tangentially on the wage loss suffered by Wichmann.[3]

The passing comment by Wichmann's counsel was not so inflammatory or flagrant as to unduly arouse the sympathy of the jury and affect its verdict. *See Julander v. Ford Motor Co.*, 488 F.2d 839, 842 (10th Cir. 1973); *Sheffield Steel Corp. v. Vance, supra*, at 933. Wichmann sought $40,000 in damages and the jury awarded her $25,000. In our view, the award was based on the evidence adduced at trial, not on the closing argument of Wichmann's counsel. *See Fidelity & Casualty Co. v. Williams*, 198 F.2d 128 (5th Cir. 1952). United Disposal has not sustained its heavy burden of establishing a plain miscarriage of justice.

United Disposal next contends that the District Court erred by instructing the jury on the applicability of the rear-end collision doctrine to this case. The elements and effect of the doctrine in Missouri are as follows:

[I]f one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle. [Citations omitted.]

*Hughes v. St. Louis Public Service Co.*, 251 S.W.2d 360, 362 (Mo.App.1952).

United Disposal initially contends the evidence does not establish that the United Disposal truck struck the Wichmann vehicle from the rear. It is argued that the truck struck only the side of the Wichmann vehicle and, thus, the rear-end collision doctrine is inapplicable. However, unimpeached testimony of Wichmann and Yelverton, the driver of the United Disposal truck, indicates that the Wichmann automobile was struck from the rear. Photographs of the damaged automobile substantiate this testimony. *See Gaynor v. Horwitz*, 464 S.W.2d 537 (Mo.App.1971). Therefore, United Disposal's argument on this issue lacks any factual foundation.

Alternatively, it is argued that the United Disposal truck did not "overtake" Wichmann's automobile as required by the rear-end collision doctrine. The record is not

**3.** On appeal, United Disposal contends that the District Court erred in permitting Wichmann to present evidence of lost wages. Wichmann was allowed to testify, without objection, as to her wage scale while employed with St. Louis Tool Company before the accident. United Disposal suffered no prejudice from this testimony. In presenting its case, United Disposal offered Wichmann's employment records which reflected on their face Wichmann's hourly rate of pay as well as her weekly gross and net pay at St. Louis Tob Company. Wichmann also testified that she earned $3.22 per hour while employed by Amax Foil Co. after the accident. However, Wichmann's employment experience at Amax Foil Co. was offered in evidence, not for the purpose of quantifying Wichmann's wage loss, but rather to exemplify the extent to which her disabilities interfered with the performing of physical labor. The admission of evidence as to Wichmann's wage scale at Amax Foil Co. was, if error at all, clearly harmless error. Fed.R.Civ.P. 61.

Wichmann contends that the unpleaded issue of lost wages was tried by the implied consent of both parties. *See* Fed.R.Civ.P. 15(b). Although Wichmann, through direct testimony, and United Disposal, through indirect means, presented some evidence bearing upon Wichmann's pre-accident wage scale, the amount of evidence was slight and the record does not show that the parties "understood the evidence to be aimed at the unpleaded issue." *MBI Motor Co. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir. 1974). Moreover, United Disposal objected to the admission of evidence relating to Wichmann's post-accident wage loss, contending that such evidence was outside the scope of the pleadings. Finally, the District Court did not specifically submit the issue of lost wages to the jury. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1493, at 469–70 (1971). Based upon the inconclusive record in this case, we conclude that the issue of lost wages was not tried by the implied consent of the parties.

supportive of this argument. As the driver of the United Disposal truck, Yelverton, entered Interstate 70 from an entrance ramp, he observed Wichmann's automobile and other stopped or slow-moving vehicles approximately 100 to 125 feet ahead. The truck was traveling at 35 miles per hour. Contrary to United Disposal's contention, the record reflects that Yelverton had adequate time and distance within which to stop the truck and avoid a collision when he first observed the slowly moving traffic ahead. *See Lichtenberg v. Hug*, 481 S.W.2d 527, 529–30 (Mo.App.1972). When asked if he could have stopped the truck safely after first seeing the Wichmann automobile, Yelverton replied: "I believe that I would have [had] room to stop the truck, yes." However, Yelverton instead attempted to pass Wichmann on the left but was precluded from doing so because of passing traffic in that lane. He had then advanced to a point where he could not stop the truck and avoid a collision with Wichmann's vehicle. His attempt to avoid Wichmann's automobile by swerving to the right and into the safety lane was aborted when the truck struck the curb, causing a collision with the rear of Wichmann's car. Under these facts, Yelverton "overtook" the Wichmann automobile within the contemplation of the rear-end collision doctrine.[4]

■ United Disposal also contends that the District Court erred in refusing to give the contributory negligence instruction offered by United Disposal. This contention is premised upon Yelverton's testimony which indicates rather inconclusively that the brake lights on Wichmann's automobile might not have been operational at the time of the accident. However, even if the brake lights were not working properly, that condition did not contribute to the accident. When he was first positioned to see the Wichmann automobile, Yelverton testified that he was immediately aware that it was stopped or slowly moving.

Brake lights would have provided no additional warning. The proffered contributory negligence instruction was unwarranted and properly refused by the District Court.

■ Wichmann was able to slow down and avoid hitting the stymied vehicles in front of her. Yelverton was under a similar duty to have the United Disposal truck under control to avoid the hazards of slower or stalled traffic. Freeways are constructed to carry a large volume of fast traffic and necessarily present uncommon traffic hazards from the front, the sides and the rear. In Missouri, a driver has a duty to use the highest degree of care to cope with the varied conditions arising in freeway traffic, Mo.Rev.Stat. § 304.010(1) (1969), and failure to exercise such care constitutes negligence. The record here shows that Wichmann exercised nothing less than the highest duty of care in the operation of her vehicle and no evidence was presented to justify the giving of the contributory negligence instruction.

Finally, it is argued that the District Court's voir dire questions to the jury improperly injected the issue of insurance coverage into the case. Before the voir dire questioning, United Disposal informed the District Court of the financial interest of United States Fidelity & Guaranty Company in the outcome of this litigation. In voir dire, the District Court asked prospective jurors the following two questions:

> Do you or does anyone in your family or do any of your close friends have any connection with the insurance business as an officer, employee, stockholder, claims adjuster or otherwise * * *?

> Would either the knowledge or the suspicion that one or more of the parties to this suit were or were not covered in whole or in part by insurance affect your ability to render a fair and impartial verdict based solely upon the evidence and

---

4. The cases cited by United Disposal in support of its argument are factually distinguishable. All involve situations where a vehicle turns at an intersection directly into the path of an oncoming vehicle and is struck from the rear by the oncoming vehicle. *Todd v. Presley*, 413 S.W.2d 173 (Mo.1967); *Rosenfield v. Peters*, 327 S.W.2d 264 (Mo.1959); *Lichtenberg v. Hug, supra*. Plainly, no such situation is present in this case.

the Court's instructions as to the law * * *?

 We find no error in the first insurance-related voir dire question posed by the District Court. Although the sensitive issue of insurance must be treated circumspectly in voir dire, it is permissible to determine whether any prospective juror harbors some bias due to a direct or indirect involvement with an insurance company. *Labbee v. Broadway Express, Inc.*, 469 F.2d 169, 172 (8th Cir. 1972); *see Socony Mobil Oil Co. v. Taylor*, 388 F.2d 586, 589 (5th Cir. 1967); *Wagner Electric Corp. v. Snowden*, 38 F.2d 599, 600 (8th Cir. 1930). Any such bias should be exposed to enable the litigants to make an informed decision as to whether or not to peremptorily strike a juror or challenge a juror for cause. In inquiring as to prospective jurors' connections with the insurance industry, the District Court was attempting to sensitively expose any such bias or interest. In doing so, the District Court did not abuse its discretion.[5]

 However, the second question overemphasizes the element of insurance. Upon establishing that prospective jurors maintain no direct or indirect ties with the business of insurance, the District Court should not question them concerning their abstract feelings about insurance coverage. Such a question, by implication, injects the specter of insurance into the case to an unnecessary and undesirable degree. On balance, the relative need for such a question to discover possible bias is outweighed by the potential for prejudice to the insured party. Therefore, the District Court abused its discretion in asking this voir dire question.[6]

We cannot say, however, that United Disposal has sustained its burden of establishing actual prejudice from the improper voir dire question. *See Slatinsky v. Bailey*, 330 F.2d 136, 141 (8th Cir. 1964). Wichmann presented a strong case on the issues of liability and damages. The jury award was well below the amount sought by Wichmann. On the basis of the record as a whole, we conclude that the error did not affect the substantial rights of United Disposal and was harmless. Fed.R.Civ.P. 61.

The judgment of the District Court is affirmed.

---

**5.** Even if we assumed that resolution of this issue involved principles of substantive, rather than procedural, law and is thereby governed by the law of Missouri, *see Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), no different result is compelled. Decisional authority in Missouri, although exhibiting a preference for a more particularized voir dire question on the issue of insurance, has not reversed judgments in cases involving voir dire questions similar to the question in the instant case. *Butcher v. Main*, 426 S.W.2d 356, 360 (Mo.1968); *Gooch v. Avsco, Inc.*, 340 S.W.2d 665, 667–68 (Mo.1960); *Wallnitz v. Werner*, 241 S.W. 668, 670 (Mo.App.1922).

**6.** We express no view on whether or not this question would be proper if prospective jurors disclose a direct or indirect relationship with the insurance industry. Here, none of the jurors maintained any such connections.