George ANDERSON, Appellant,

v.

**BENSON MANUFACTURING COMPANY,
Inc., a Corporation, Respondent.**

No. 47797.

Supreme Court of Missouri,

Division No. 2.

Sept. 12, 1960.

Motion for Rehearing or for Transfer to
Court en Banc Denied Oct. 10, 1960.

Jack N. Bohm, Kansas City, for appellant.

Reed O. Gentry, Gene C. Morris, Kansas City, for respondent, Benson Manufacturing Co., Inc., a Corp., Rogers, Field, Gentry & Jackson, Kansas City, of counsel.

BOHLING, Commissioner.

George Anderson sued Benson Manufacturing Co., Inc., a corporation, asking $50,-000 for personal injuries sustained when some crating frames stacked against defendant's building fell, struck plaintiff on the legs, and injured him. Defendant's answer, among other defenses, alleged that plaintiff was a statutory employee of defendant and the provisions of the Workmen's Compensation Law precluded plaintiff's action. Plaintiff having replied a separate trial was had on said defense before the court by agreement between the parties. § 510.180, subd. 2. (Statutory references are to RSMo 1949, V.A.M.S.) The finding of the court was in favor of defendant. Plaintiff's claim was dismissed and plaintiff appealed.

■ Section 287.040, subd. 1 provides: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business." Section 287.120, subd. 2 makes the rights and remedies of the act exclusive. Montgomery v. Mine La Motte Corp., Mo., 304 S.W.2d 885, 888 [4, 8].

■ Defendant operates three plants in the Kansas City area. Plaintiff worked at defendant's Plant 2. Defendant's work was practically all Government work, the manufacturing of materials used in national defense, embracing materials and production designated by the Government as "classified." The Air Materials Command and the Atomic Energy Commission made periodic surveys and inspected defendant's security controls, such as its guard forces, its entry controls, fire protection measures, and other factors for protection against sabotage.

In March, 1956, Bankers Protective Patrol, Inc., a corporation furnishing guard and patrol services to others in the Kansas City area and referred to herein as Bankers Patrol, contracted with defendant to provide guard service for defendant's various plants, as directed by defendant, agreeing to carry Workmen's Compensation insurance covering all guards furnished defendant. Defendant relied upon Bankers Patrol to see that the guards furnished defendant were cleared for the work defendant was doing.

Everett Stearns had charge of the security measures at defendant's plants. Thomas M. Church was defendant's Plant Manager at Plant 2. Norman Follett was defendant's Plant Protection Manager and in charge of the guards at Plant 2. These employees of defendant had held their respective positions for several years prior to plaintiff's injury.

Some of the guards at defendant's plants were direct employees of defendant and others, including plaintiff, were furnished to defendant by Bankers Patrol. Plaintiff worked as a guard for the United States Government five days a week at the Kansas City Records Center, Security Division, and held full security clearance with the Government. He also worked two days a week for Bankers Patrol. Plaintiff had been at defendant's for only a short time when injured on September 10, 1957. He was not on defendant's pay roll, but was paid for his work for defendant by Bankers Patrol, his withholding tax and social security being deducted. He made claim and received workmen's compensation payments from Bankers Patrol.

Defendant's Plant 2 worked around the clock. Plaintiff was assigned to the second shift, from 4:00 p. m. to midnight. Defendant had two guard posts at Plant 2. Post No. 1 was at the plant entrance in the office of defendant's Plant Protection Manager Follett. Forrest Douse, an employee of Bankers Patrol, had been a guard at Plant 2 for over a year when plaintiff was injured. He was at Post No. 1, was in charge of the other guards at Plant 2, took orders from Mr. Follett, "our boss," and transmitted the orders to the other guards. He instructed plaintiff in his duties at Follett's direction. Plaintiff was stationed at Post No. 2, which was at the rear of the plant. Visitors were required to sign a register and wear a visitor's badge while in defendant's plants. All of defendant's employees were screened and required to wear employee badges. The color of an employee's badge designated the department in which he worked, and the employee was required to remain in his department unless the established controls permitted his movement between departments. The Government had security regulations for all classified prints and access to them was restricted to employees cleared therefor. A duty of the guards was to control the movement of visitors and employees in accordance with the badges issued to them. There were eleven clock or key stations in Plant 2. Each of the two guards at Plant 2 on plaintiff's shift carried a time clock and made alternate hourly trips to these keys stations on the hour and half hour to check the doors and protect against anything out of the ordinary occurring, plaintiff making his checks on the hour. Plaintiff admitted he made the hourly trips, was to keep unauthorized persons from entering the storage area, was to watch the two doors at the rear of the plant, was to keep employees from using said doors and from parking in that area, and, if they were carrying anything out, to see that they had the necessary pass for that purpose.

In Viselli v. Missouri Theatre Bldg. Corp., 361 Mo. 280, 234 S.W.2d 563, 566, 567, the corporate owner of a 12-story office building provided various services, including window cleaning, to its tenants. It orally contracted with one Berman to clean the windows. Berman hired and paid his window cleaners, exercised exclusive control over them, and cleaned the windows approximately every two weeks. An employee of Berman was killed when he fell while washing one of the windows. Under these stipulated facts window cleaning was held an integral and essential part of defendant's business. The mere fact that the owner had never performed the window cleaning services by its employees was considered not a determining factor.

In Montgomery v. Mine La Motte Corp., Mo., 304 S.W.2d 885, 890, plaintiff was injured while working for an independent contractor who agreed to load ore at defendant's mine and truck it to defendant's mill for processing. The court stated: "This was an essential step in the normal operations of defendant" (888 [1]), and defendant was considered a statutory employer of plaintiff within § 287.040, subd. 1 "whether or not plaintiff affirmatively consented to that relationship" (890 [8]). See, among others, Kennedy v. J. D. Carson Co., Mo.App., 149 S.W.2d 424, 427, 428; Baker v. Iowa-Missouri Walnut Log Co., Mo.App., 270 S.W.2d 73, 77 [6]; Atlas Powder Co. v. Hanson, 8 Cir., 136 F.2d 444; Kirch v.

Sheffield Steel Division, Inc., D.C.W.D.Mo., 174 F.Supp. 221, affirmed, we understand, by the Circuit Court of Appeals, Kirch v. Armco Steel Corp., 8 Cir., 274 F.2d 120.

The possible relationship between an employer and the employee of an independent contractor under § 287.040 vary with the operation of the usual business of the principal employer. Each case usually rests upon its particular facts. Here, defendant, prior to plaintiff's injury, had engaged in national defense work with security personnel for several years. Defendant's use of guards was not an unpredictable and sporadic happening but was a regular and continuous operation in connection with its national defense work. The testimony was that without the security system, including the controls and the guards, defendant would lose its Government contract work. Defendant had direct employees who performed guard services and exercised full control over the services of the guards furnished by Bankers Patrol. Plaintiff was on duty during defendant's working hours. The conduct of a part of the usual business of an employer may not in itself justify his continuation in business but nevertheless may fit in and constitute an operation of the usual business conducted on the premises. Plaintiff's guard work was being performed under contract and on defendant's premises; and under this record the furnishing of guard services was not an isolated and specialty job at defendant's plants but was regularly and continuously performed as an integrated part of defendant's usual business.

The cases stressed by plaintiff differ. In Wooten v. Youthcraft Mfg. Co., Mo., 312 S.W.2d 1, 3 [1], plaintiff, an employee of an independent contractor, was injured while performing janitor service after defendant's business hours, defendant having discontinued its janitor service during business hours because it interfered with the proper operation of its business, the manufacture of women's clothing. Rucker v. Blanke Baer Extract & Preserving Co., Mo.App., 162 S.W.2d 345, 347 [5], involved the occasional, twice a year, painting of smokestacks

by a steeplejack for a manufacturer and canner of fruits, preserves and the like. Szofran v. Century Elec. Co., Mo.App., 255 S.W.2d 443, 448 [7], and State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838, 842, involved work of the nature of a permanent improvement to defendant's plant by an independent contractor, defendant's usual business not including work of that nature. In Garden City Foundry Co. v. Industrial Commission, 307 Ill. 76, 138 N.E. 122, 125 [5], there was a failure of proof as to the character of the business conducted by the defendant.

 Plaintiff says the court based its ruling on hearsay testimony of the terms of the contracts governing defendant's national defense work. Mr. Stearns testified that all of defendant's Government contracts contained clauses that defendant agreed to abide by the security regulations at its plants. Plaintiff "objected," stating the contracts were the best evidence. Defendant thereupon offered the security regulations of the contracts it agreed to abide by, and plaintiff objected on the ground the provisions were immaterial and irrelevant, stating in part: "And we do not deny that they probably had to have guards under regulations, but we still maintain that that has nothing to do with the usual course of business." The court was of the opinion the details of the contracts would not make much difference; that it was common knowledge those engaged in Government work had to conform to Government requirements as to secrecy and guarding the plants, and sustained the objection, stating: "I think with the agreement that this just encumbers the record." Plaintiff's cross-examination of this witness was first devoted to bringing out any additional security measures taken at defendant's plants not covered by the witness's direct examination. The objection that evidence is immaterial and irrelevant generally preserves no issue of prejudicial error. State ex rel. West v. Diemer, 255 Mo. 336, 350, 164 S.W. 517, 521 [1–3]; Teters v. Kansas City Public Service Co.,

Mo., 300 S.W.2d 511, 515. We think the offered evidence was relevant. It tended to show good faith on the part of the defendant in having guards at its plants. Factual testimony established the use of security measures in the operation of defendant's usual business at its plants, and in the circumstances we find no prejudicial error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and HUNTER, Special Judge, concur.