**Frank J. GREISER, Respondent,**

v.

**WESTERN SUPPLIES COMPANY, Appellant.**

**No. 51467.**

Supreme Court of Missouri,
Division No. 1.

July 11, 1966.

Motion to Modify and for Rehearing Denied
Sept. 12, 1966.

Edward Fredrickson, St. Louis, for respondent.

M. E. Stokes, F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellant.

HIGGINS, Commissioner.

Action for damages for personal injuries in which defendant appeals from verdict and judgment for plaintiff for $50,000.

Plaintiff's petition, based on the doctrine of res ipsa loquitur, alleged an explosion

which caused his injuries. Defendant's answer admitted the explosion, plaintiff's injuries, and defendant's corporate status and ownership of the building when the explosion occurred. Defendant also pleaded the affirmative defense that plaintiff was a statutory employee of defendant making the Workmen's Compensation Law plaintiff's exclusive remedy. Plaintiff's reply admitted that defendant was a major employer under the Law and that plaintiff and defendant were under the Law, but denied that the injury arose by accident occurring in connection with employment of plaintiff by defendant and that the remedies provided by the Law were exclusive.

The explosion which injured plaintiff occurred February 26, 1962. Plaintiff at that time had been employed for eight years by Pinkerton's National Detective Agency, Inc., as a security guard, and during the last three years of his employment had been assigned to defendant. Pinkerton paid his wages, withheld his taxes, furnished him a gun and badge, supplied him with uniforms and emblems, told him when and where to work, and gave him written instructions on his duties while assigned to the plant occupied and controlled solely by defendant at 2920 Cass Avenue, St. Louis, Missouri. Western Supplies Company was engaged in making shoe machinery and cutting dies used by the shoe industry. The main floor of its building was practically all manufacturing space. A partial second floor housed office facilities and a partial basement was used for a boiler and utility room. The boiler room contained a furnace and boiler for heating the plant, a gas water heater and a gas compressor which built up the pressure of natural gas as it came from the supplier's mains for use in the ovens and furnaces which were used to harden steel dies. There were fenced parking lots at the sides of the building.

Defendant and Pinkerton had an agreement under which Pinkerton furnished protection service to defendant for a fee, and under that contract, plaintiff was assigned to perform duties on the 12 midnight to 7:00 A.M. shift six days per week. Plaintiff's usual procedure was to relieve a Mr. Kreiger, a watchman employed directly by Western on the prior shift. Plaintiff would receive the time clock from Mr. Kreiger, let him out the gate, lock it behind him, and then commence his rounds which included six stations. Station No. 1 was the office where he would see that all lights were out, water turned off, and doors and windows secured; station No. 2 was the factory office on the first floor where he checked the tool crib and maintenance cage; station No. 3 was a quonset hut on the parking lot where he checked the gate and building security; station No. 4 was another office check; station No. 5 was the boiler room where plaintiff checked the boiler gauges and water level and saw that the compressor was off; station No. 6 was in the plating department where the heat-treating furnaces and chemical vats were located. He "punched" each of these stations into the time clock on each hourly round. It took ten to fifteen minutes to make a round. Plaintiff had additional duties on his 5:00 A.M. round of admitting the milkman and opening the lot gates and plant doors so the day shift employees could enter. He also had additional daily duties on his 4:00 A.M. round. When he got to the boiler room, station No. 5, he would fill an oil cup on the side of the gas compressor, turn a valve to let gas into the compressor and another to let gas into a storage tank. He would wait until the gas pressure rose to 25 pounds and then go upstairs to station No. 6 and light the heat-treating furnaces with a gas torch provided for that purpose by Western. He would first light the torch, then open a gas valve on each furnace and apply the torch to the furnace. There were some electrical controls on the furnaces and a part of plaintiff's job was to manipulate them in a manner which kept the furnaces at a certain temperature. Plaintiff would not light all the furnaces every day. On some occasions some of the furnaces would have written notes left on them by Western employees

telling him not to light those furnaces. Also on occasion plaintiff would remove metal from the furnaces at the request of Mr. Kreiger. This operation would arise if the metal had not cooled sufficiently for Kreiger to remove it before he left and it had to be done before the furnaces could be lighted. It was necessary for the furnaces to be lighted on the 4:00 A.M. shift in order for those who worked at the furnaces on the day shift to start at the regular time. There was also a special procedure to follow if a bell on the furnace rang, in which case plaintiff was to shut off the gas and pull a switch.

On February 26, 1962, plaintiff completed his 4:00 A.M. round. He started the gas compressor in the boiler room and then went upstairs and lighted the furnaces. As he passed the opening to the boiler room on his way to the office he heard a "foreign" noise and went downstairs to investigate. He checked the water gauge on the boiler and turned to check the pressure gauge. At that time an explosion occurred and the next thing plaintiff remembered was being at the telephone asking for police and fire departments. Plaintiff did not know what exploded. During the six months preceding the explosion, plaintiff reported to defendant that he had smelled gas in the boiler room on three or four occasions. He did not smell any gas on the occasion of the explosion and did not know of any trouble in the boiler room before the explosion. An expert gave his opinion that a natural gas explosion occurred.

Appellant says that the court erred in submitting the case to the jury and in failing to sustain his motions for directed verdict and for judgment after verdict because "plaintiff was an employee of defendant within the meaning of the Workmen's Compensation Act of the State of Missouri. All of plaintiff's work including the security measures and duties involving turning on machinery, lighting furnaces and checking temperatures and pressures were part of the usual business of defendant * * *." Respondent joins the issue saying that

"plaintiff, an employee of Pinkerton National Detective Agency, Inc., an independent contractor, was not a 'statutory employee' of the defendant under the provisions of § 287.040, V.A.M.S., and was therefore entitled to maintain a common law action against defendant because fair-minded men could conclude from the evidence that the work being performed by plaintiff was not an operation of or in the usual course of defendant's business but was merely incidental, ancillary or auxiliary thereto; the trial court properly submitted this question * * * and the jury resolved the issue in plaintiff's favor."

Section 287.040, V.A.M.S., of the Workmen's Compensation Law provides: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business," and Section 287.120, V.A.M.S., provides: "The rights and remedies herein granted to an employee, shall exclude all other rights and remedies of such employee * * * at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter."

In determining whether one is a statutory employee under Section 287.040, V.A.M.S., it has been declared that " 'If the work being done at the time of injury is not an operation of, or in the *usual* course of, the business which the employer *customarily* carries on upon his premises, but is only incidental, ancillary, or auxiliary thereto, then'—the contractor or his employee is not a statutory employee." State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838, 842[2]. " '* * * there is no infallible test. Each case presents its own * * * particular facts.' " Walton v. United States

16

Steel Corp., Mo., 362 S.W.2d 617, 622[3], quoting Viselli v. Missouri Theatre Bldg. Corp., Mo., 234 S.W.2d 563, 566[1]. "The defense that plaintiff was a statutory employee and hence could not maintain an action at common law is an affirmative one and the burden of pleading and proving that defense rests upon the defendant," and in determining whether the court erred in failing to direct a verdict for defendant it is the rule that a " 'court should never withdraw a question from the jury, unless "all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue." ' " Walton v. United States Steel Corp., supra, 362 S.W.2d l. c. 621[2]. See also Roberts v. Epicure Foods Co., Mo., 330 S.W.2d 837, 839[1]. It has been said too that " 'the chief purpose of provisions of this type is to protect the employees of subcontractors who are not financially responsible, and to prevent employers from relieving themselves of liability by doing through independent contractors what they would otherwise do through direct employees.' " Perrin v. American Theatrical Co., 352 Mo. 484, 178 S.W.2d 332, 334[2].

Under the authorities the issue can be stated as whether fair-minded men could conclude that the work done by plaintiff at the time of his injury was merely "incidental, ancillary or auxiliary" to defendant's business or, on the other hand, was such work shown to be "an operation of, or in the usual course of," defendant's business?

In Anderson v. Benson Mfg. Co., Mo., 338 S.W.2d 812, plaintiff, an employee of an independent contractor, Banker's Protective Patrol, Inc., was assigned as a security guard at the defendant company while it was engaged in classified work for the government calling for enforcement of security regulations. Plaintiff was injured while on the job by the fall of crating frames stacked against defendant's building. In holding that he was required to proceed under the Workmen's Compensation Law the court said: "Defendant's use of guards was not

an unpredictable and sporadic happening but was a regular and continuous operation in connection with its national defense work. * * * The conduct of a part of the usual business of an employer may not in itself justify his continuation in business but nevertheless may fit in and constitute an operation of the usual business conducted on the premises. Plaintiff's guard work was being performed under contract and on defendant's premises; and under this record the furnishing of guard services was not an isolated and specialty job at defendant's plants but was regularly and continuously performed as an integrated part of defendant's usual business." 338 S.W.2d l. c. 815 [2]. Similar results were reached under comparable provisions of Louisiana law, LSA–R.S. 23:1021 et seq., in Gant v. Jackson Brewing Co., La.App., 112 So.2d 767, where a Pinkerton guard assigned security duties only in defendant's brewery was held to be a statutory employee of the defendant in respect to injuries received when he slipped and fell while making rounds; and in Isthmian S.S. Co. of Delaware v. Olivieri, 5 Cir., 202 F.2d 492, where plaintiff, an employee of Lehon's Protective Police Service and assigned to guard cargoes on defendant's wharves, was held to be defendant's statutory employee in respect to injuries caused by cartons permitted to fall by an employee of defendant.

Although the Louisiana cases are persuasive and the language and circumstances in Anderson v. Benson Mfg. Co., supra, are compelling, this case need not rest on an answer limited to whether plaintiff's security duties alone made him a statutory employee of defendant because, in addition to those duties, plaintiff performed work clearly in the operation or usual course of defendant's business which made him defendant's statutory employee. Plaintiff regularly and routinely checked the pressure and water levels in the boiler which heated defendant's plant; he removed cooling metal from the furnaces if necessary; he oiled the gas compressor; he opened valves to permit natural gas to enter the com-

pressor and storage tanks which was essential to the function of the heat-treating furnaces; when the necessary pressure was reached, he fired the heat-treating furnaces indicated to be fired and adjusted constant temperature controls, operations necessary to the preparation of the metal used in defendant's manufacture of shoe machinery and cutting dies. Prior to plaintiff's employment, such duties were performed by employees of defendant, and it was obviously essential that these operations be performed by plaintiff or someone at 4:00 A.M. in order for the plant workers on the day shift to commence their work. In this respect plaintiff testified: "Q And you knew, of course, if you didn't start all of this equipment, then the plant couldn't run when the employees came in? A They would have to wait until they heated. Q Well, they couldn't start up at a regular time? A No. Q So it was essential that you do this? A Yes."

Thus, even though plaintiff did not actually form or shape metal into a die or tool, his work was regularly a part of the total work performed at the plant in that workers on another shift did the forming and shaping after he had first timely prepared their equipment and plant for them. Under such evidence plaintiff's work was as much an operation and a part of defendant's usual business as was plaintiff's work in Montgomery v. Mine LaMotte Corp., Mo., 304 S.W.2d 885. There defendant was engaged in mining and processing lead ore. Ore from the mine was trucked three miles to the mill by an independent contractor and plaintiff was a truck driver employed by the independent contractor for that operation; he was struck by a rock while waiting in the mine for his truck to be loaded with ore to be hauled to the mill. He attempted unsuccessfully to recover in a common-law action against defendant, the court holding that he was a statutory employee whose remedies under the Workmen's Compensation Law were exclusive. Plaintiff's situation is likewise similar to plaintiff's in Kennedy v. J. D. Carson Co., Mo.App.,

149 S.W.2d 424, 428[1], where plaintiff, an independent contractor in the business of repairing elevators, was held to be the statutory employee of the defendant department store because "At the time of his injury he was making an adjustment which was a part of the regular work which his agreement required him to do. The elevator being a highly necessary instrumentality in carrying on the (company's) usual business, it was a part of the company's business to anticipate the necessity for just such work to be done, * * *. Such repair and service work * * * was a necessary incident and a usual operation of the company's usual business, and in no proper sense of the word could it be called 'casual.'" In Viselli v. Missouri Theatre Bldg. Corp., supra, window-washing service performed by plaintiff employee of an independent contractor was a service sold to tenants in the usual course of defendant's business of leasing office spaces, circumstances which dictated holding that plaintiff was defendant's statutory employee. See also Fox v. Fafnir Bearing Co., 107 Conn. 189, 139 A. 778, 58 A.L.R. 861. In McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W. 2d 149, plaintiff was held to be a statutory employee under less persuasive circumstances. There plaintiff, a bricklayer, was employed under contract to make repairs to defendant's buildings. He charged in his common-law action that defendant negligently permitted smoke, gases, and fumes to accumulate in buildings where plaintiff was making repairs resulting in injury to him. The court reversed a jury verdict for plaintiff holding that plaintiff's repair work was in the usual operation of defendant's business of manufacturing meat products. Plaintiff had worked at his employment at Western for three years and it was, therefore, regular rather than casual, Section 287.020[7], V.A.M.S., and it certainly was not sporadic or unpredictable. Nabors v. United Realty Co., Mo.App., 298 S.W.2d 474, 478[3].

Respondent argues properly that the mere fact that a delivery of defendant's products,

Walton v. United States Steel Corp., supra, 362 S.W.2d l. c. 624[5], the performance of janitorial services, Wooten v. Youthcraft Mfg. Co., Mo., 312 S.W.2d 1, 4[2], and having one's windows washed, Dixon v. General Grocery Co., Mo., 293 S.W.2d 415, are essential to defendant's operations does not mean that such are necessarily the usual business of the defendant. Those cases are not determinative of plaintiff's situation here, however, because in Walton v. United States Steel Corp., supra, the plaintiff was an employee of the independent contractor who delivered the defendant manufacturer's products over the road, and thus was not engaged in the "usual business which defendant customarily carried on upon its premises," 362 S.W.2d l. c. 622 [4]; and in Wooten v. Youthcraft, supra, and Dixon v. General Grocery Co., supra, the janitorial and window-washing services performed by the plaintiffs bore no relation to operations of defendants' usual businesses of manufacturing women's clothing and warehousing groceries, as did the duties performed by Mr. Greiser for Western Supplies Company.

Thus, it conclusively appears from plaintiff's evidence and from a most favorable view of all the evidence that the work done by plaintiff at defendant's plant was clearly and as a matter of law a part of the operation of the usual business of defendant; and since plaintiff was, therefore, an employee of the defendant within the meaning of the Workmen's Compensation Law, plaintiff failed to make a submissible case for the jury and the court erred in refusing to direct a verdict for defendant. It is unnecessary to consider other errors assigned.

The judgment is reversed.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOLMAN, P. J., HYDE, J., and WOLFE, Special Judge, concur.

HENLEY, J., not sitting.