Norman Glenn DUNN, Appellant,

v.

GENERAL MOTORS CORPORATION, Respondent.

No. 55249.

Supreme Court of Missouri, Division No. 2.

May 10, 1971.

Benson Cytron, House Springs, for appellant.

Murphy & Kortenhof, Joseph M. Kortenhof, Edward E. Murphy, Jr., St. Louis, for respondent.

HENRY I. EAGER, Special Commissioner.

This is a suit for personal injuries against General Motors Corporation for an injury which occurred on March 29, 1968, at defendant's Chevrolet-Fisher Body Plant in St. Louis. The damages claimed are $32,184.67. The appeal is from the sustaining of defendant's motion for summary judgment. The details of the injury are immaterial here, and it will suffice to say that it occurred when plaintiff, starting to descend from an unloading platform or dock, fell to the ground when a post and a handrail came loose from the floor of the dock. Plaintiff was a tractor driver for "Action Transfer Company," individually owned by his father, Norman E. Dunn. We shall refer to General Motors as G-M and to the transfer company as A-T. We are interested here in the following phases of the General Motors operation: it received automobile parts and other materials from many locations, transported in trailers by 92 truck lines or carriers; it needed the various supplies at different and precise times; it is said and not denied that the carriers were required by their published tariffs to deliver the trailers to defendant's dock; apparently they preferred not to have their own drivers wait to do this, and 88 of them contracted with Action Transfer to spot the trailers for them when needed at one of defendant's three docks. A-T owned two specially equipped tractors and employed two drivers, one of whom was plaintiff. The carriers dropped off the trailers in the yard of the Chevrolet plant or the yard of the G-M warehouse; plaintiff was regularly given, by a G-M employee, a list of the trailers desired, showing to which one of three docks they should be taken; he then located these, one by one, hooked on to them with his special hydraulic lift, and spotted them, one by one, at the required dock for unloading. So far as the evidence shows, the furnishing of the list was the only direction given to plaintiff by G-M. After the trailers were unloaded, plaintiff again moved them to the proper space or spaces on G-M premises, from which the carriers would pick them up. A-T had no contract with G-M; its contracts for this work were on forms executed separately by 88 of the carriers; it did not work for three others who had declined to so contract, and it refused to spot trailers for one other. A-T has re-

fused, on request of G-M, to spot trailers for those four carriers. It was paid $3.50 for each trailer which it spotted, by the carrier which owned it. A-T had, over a period of 90 days, received $31,351.50 from the carriers. In the same period it had performed certain incidental services for G-M, for which it received $663.50. Those services consisted of: moving trailers which had been directed by G-M to the wrong dock, or at the wrong time, moving G-M's own trailers when it had no tractor available, and perhaps similar incidental movement. Plaintiff was paid solely by A-T, and took all his orders from A-T except for the placement and sequence of the trailers as stated; all of his work was on G-M premises except when he drove out for gas or repairs or in movement from one part to another. A-T had written to G-M stating specifically which carriers it would spot trailers for. It had performed this service by the method stated since 1958; for eight years prior to that time the work was similarly performed by American Carloading Company. Plaintiff performed no loading or unloading work. The spotting of trailers was the principal, if not sole, business of A-T. G-M states in its brief that under the published tariffs, the rates of the carriers cover "one movement going to the plant, and one movement coming out of the plant." It seems obvious that this included a delivery to *the dock,* for the carriers have continuously assumed to pay A-T for that work. The material delivered in the trailers is for use by G-M in the assembly of automobiles. That is not disputed. One truck line maintains its own men on the G-M premises to spot its trailers; the other three are called by G-M when it wants their trailers and they send someone there to spot them. G-M does none of this work by its own employees.

Plaintiff pleaded the bare substance of these facts and his injury, allegedly due to defendant's negligence. The answer denied sundry allegations, pleaded contributory negligence, and specifically pleaded that plaintiff was a statutory employee of G-M under § 287.040 RSMo 1959, V.A. M.S., "working under contract for and on the premises of this defendant," and also in the "usual conduct of defendant's business"; also that plaintiff was prosecuting a claim against A-T under the Missouri Workmen's Compensation Laws; that plaintiff was thus prohibited from maintaining the common law action. No reference was made to the "borrowed servant" defense. The evidence recited above all appeared from the depositions of plaintiff and his father, taken and filed in the cause. Thereafter, defendant filed its motion for a summary judgment, in which it alleged: that there was no genuine issue as to any material fact; that plaintiff was a statutory employee of G-M under § 287.040, supra, and was barred from "bringing a common-law action against defendant." Again, no mention was made of the "borrowed servant" doctrine. The motion for a summary judgment was sustained and, after an unavailing motion for a new trial, the plaintiff appealed.

■ The procedure and principles governing motions for summary judgment are set out in our Rule *74.04,* V.A.M.R. We need not review the rule here, but we do note that it provides that in no case shall such a judgment be rendered "unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." (Subsection h.) Section *287.040-*(1), supra, provides: "Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business." The burden of proving the three essential requirements of this statute is on the party claiming the benefit of it, and this would certainly apply to the "unassailable proof" required by Rule *74.04;* the

defense is an affirmative one, Greiser v. Western Supplies Co., Mo., 406 S.W.2d 13.

The points of the appellant here are, in substance: that the evidence did not "unassailably show" the statutory elements necessary to make plaintiff a statutory employee of G-M; and that the "borrowed servant" doctrine cannot be raised for the first time on appeal. Defendant says: that it was entitled to a summary judgment because the "undisputed facts" showed that plaintiff was a statutory employee of G-M; and that the facts also showed that plaintiff was a "borrowed servant" of G-M.

■ The "borrowed servant" contention may be ruled rather briefly. This is a common-law defense, which must be affirmatively pleaded and proved. It was not referred to in any way in defendant's answer or in its very specific motion for summary judgment. It is not shown that it was, or could have been, referred to in the trial court on the hearing of defendant's motion. Had it been properly raised, the plaintiff might have wished and would have been entitled to controvert the defense by affidavits or other evidence; we cannot say that there could not have been any justification for this or that all the evidence on the "borrowed servant" theory would have necessarily been the same as that on the statutory employee defense. Under these circumstances this Court will not consider the "borrowed servant" defense for the first time on appeal. The point was expressly ruled against the defendant in the case of Walton v. United States Steel Co., Mo., 362 S.W.2d 617, loc. cit. 620. There was no trial here of an issue by implied consent, for the issue was not tried or presented in any form to the trial court. And see Schimmel Fur Co., Inc. v. American Indemnity Co., Mo., 440 S.W.2d 932. Further, defendant pleaded in its answer that plaintiff was prosecuting a Workmen's Compensation claim against A-T, a fact which seems somewhat inconsistent with defendant's present claim that plaintiff was G-M's servant, "borrowed" or not. The assertion of this defense is not merely an additional reason for affirming the trial court's judgment, as defendant suggests, but it constitutes the injection of a completely different theory of defense, and it will not be considered by us under these circumstances. Since the case is to be remanded, the parties may wish to amend their pleadings.

■ The substantive question here is whether plaintiff was a statutory employee of G-M under § 287.040,[1]—or rather, whether the evidence "unassailably" showed that he was. We hold that it did not. Each side cites a number of cases; we need not review them in full detail, for we have determined that two of the statutory elements should be decided as fact questions: (1) whether plaintiff was working under a "contract" with G-M, and (2) whether he was doing work which was "an operation of the usual business" of G-M. We note that plaintiff took no part in the unloading of cargo; that G-M's own employees had done that work for years. That the only directions plaintiff received from G-M was a list of the trailers to be spotted; that in all other respects he was apparently subject to the control of his own employer, A-T. The very small amount of work which he performed directly for G-M was kept separate from his main work, and was billed and paid for separately. The injury did not occur in the performance of that work; and it should have no effect upon his relationship with G-M in his spotting of trailers for the carriers. A-T had written contracts with each of the carriers for which it spotted trailers; it had none with G-M. It could well be that G-M had contracts with the carriers, but none was in evidence; the tariffs are said to have required the carriers to deliver all cargo to the dock, according to the testimony of plaintiff's father; this was not objected to.

1. All statutory references refer to RSMo 1959, V.A.M.S.

Contracts between G-M and the carriers would in any event be subject to the published tariffs. If the case is later tried, copies of the tariff or tariffs and any contract which G-M might have had with the carriers should be in evidence. If the obligation of the carriers continued until delivery to the dock, that fact would be material. Plaintiff contends here that under the tariffs G-M did not even have the *right* to spot the trailers.

We cannot say, as a matter of law, that the plaintiff was working under an "implied" contract between A-T (his direct employer) and G-M. General Motors claims no express contract. Such a contract in some form is required in order to constitute plaintiff a statutory employee of G-M. The only contract shown here was between A-T and the carriers. On this evidence the only directions given to plaintiff on the main body of his work concerned the *result* to be accomplished and not the method or detail. We shall not attempt to decide the issue of contract since we must reverse and remand the case upon another point, and the evidence would undoubtedly be better developed at a trial. Since we have decided that a fact question exists on this issue, we could reverse and remand at this point, but the question of what was G-M's "usual business" requires discussion.

It is material to know just when the services of the carriers ceased and the "usual business" of G-M began. The tariffs should, in large part, furnish an answer to this question. We do know that G-M's business was the assembly of automobiles and that it needed parts, but its business was not that of transportation. A-T charged the spotting of trailers to the carriers and they paid for it. Authorities seem to indicate that a carrier's duty continues until it unloads the freight or, if it is in a carload lot, places it in a safe and convenient position for unloading by the consignee. 13 C.J.S. Carriers § 67 p. 123 et seq.; Brown v. Park Transportation Co., Mo.App., 382 S.W.2d 467; Jones v. Thompson, 360 Mo.

285, 228 S.W.2d 673; Southern Advance Bag & Paper Co. v. Terminal R. Ass'n of St. Louis, Mo.App., 171 S.W.2d 107. There is certainly evidence here to indicate that the services of the carriers had not been completed until the trailers were spotted at a G-M dock.

We proceed to discuss the cases indicating whether or not such a plaintiff is engaged in the "usual business" of a defendant. In Settle v. Baldwin, 355 Mo. 336, 196 S.W.2d 299, it was held that a railroad was not a statutory employer of one who was loading ice into a refrigerator car as an employee of an ice company which furnished ice to an independent contractor which, in turn, furnished its iced cars to the railroad. The conclusion was that this operation was merely "incidental, ancillary or auxiliary," to the usual business of the railroad, which was its operation as a common carrier. In Walton v. United States Steel, Mo., 362 S.W.2d 617, the plaintiff was injured when a bundle of steel dropped from a crane in the process of loading it onto a truck in defendant's plant. Plaintiff was the truck driver, working independently for a truck line which made 90% of defendant's deliveries; he was standing beside the truck or on the running board. It was held that defendant's motion for a directed verdict was properly overruled and that the existence of the required elements of § 287.040 were properly submitted to the jury, including the question as to whether or not the plaintiff's work was an operation of the usual business of defendant. There, in effect, the plaintiff had simply spotted his truck for loading by the defendant; in our case plaintiff had spotted a trailer for unloading. The direct employer of each was an independent contractor. There is at least an analogy.

In Sheffield Steel Corp. v. Vance, CA 8, 236 F.2d 928, a driver for a trucking company was injured when a bundle of steel rods fell from a crane in defendant's plant; the loading was being done by defendant's employees, but the plaintiff did

assist in "positioning" the bundles as they were lowered, so that his load would be balanced. (A situation not present in our case.) In discussing the application of our § 287.040 and the statutory employee doctrine, the Court stated that there is no "infallible test," but that unless there is no room for a reasonable difference in judgment the question of "usual business" is one for the trier of the facts (essentially the same ruling as in Walton, supra,) and that there was substantial evidence from which a jury might find that the plaintiff's acts and work constituted something separate and apart from the mere loading operation and was to be viewed as a "carrier operation," rather than a part of defendant's usual business. There the defendant had separated its delivery operations from its other business by using an independent contractor; in our case G-M had likewise separated its deliveries *to* the docks from its other operations by using the services of persons other than its own employees. Without further discussion of plaintiff's cases, see also: State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S.W.2d 838; Dixon v. General Grocery Co., Mo., 293 S.W.2d 415; Musielak v. International Shoe Co., Mo.App., 387 S.W.2d 217; Wooten v. Youthcraft Mfg. Co., Mo., 312 S.W.2d 1.

The above cases hold generally that it is incumbent upon the party advancing this defense to plead and prove all the elements necessary to establish it, including the fact that plaintiff's work is an operation of the usual business of the defendant; and that unless all reasonable persons would say that it is, then the question is one for a jury. We are convinced that there was very substantial evidence, to say the least, indicating that plaintiff's work was a part of the *carrier operation* and not a part of G-M's usual business of manufacturing or assembling cars. The cases cited by defendant do not tend to convince us to the contrary. One very significant question occurs to us here,— if regular over-the-road drivers for one or more of the carriers had spotted their own trailers at the dock, could they possibly be considered as performing a part of the "usual business" of G-M?

We discuss here some of the cases cited by G-M, but only briefly for, as we have indicated, we have determined that the question is at least one of fact, and these cases do not alter that conclusion; in other words, the defendant has not established, as a matter of law, that plaintiff was engaged in an operation which was a part of its usual work.

Ward v. Curry, Mo., 341 S.W.2d 830, involved the construction of the term "fellow-employee" in an insurance policy but we note also that the facts and the relationship between the parties were wholly different. The plaintiff was found to be a statutory employee. He drove a truck regularly to and from defendant's plants, bringing in rock and delivering sand and gravel, all of which was an integral part of the defendant's regular business. Plaintiff's immediate employer operated as a contract hauler. Defendant did much of the same work of hauling and delivering with its own trucks and drivers. The Court said that in fact the plaintiff conceded in his brief that he was a statutory employee of defendant; he relied for recovery upon other issues. In Viselli v. Missouri Theatre Bldg. Corp., Mo., 234 S.W.2d 563, the employee had sought and received a workmen's compensation award as a statutory employee. He was a window washer, employed by an independent contractor who had contracted with the building owner to furnish such services, and had long done so. It was held that since the owner had for years stipulated in its leases to furnish window cleaning service to its tenants, that work had become an integral part of its operations.

In Montgomery v. Mine La Motte Corp., Mo., 304 S.W.2d 885, the plaintiff drove a truck for an independent contractor, hauling ore from defendant's mine to a processing plant. The trucks were loaded in the

mine. He was injured while his truck was being loaded. It was held that the transporting of the ore from the mine to the processing plant was an essential step in defendant's usual business. It also appeared that at times defendant did the same work with its own trucks and drivers. Plaintiff was held to be a statutory employee. We find no fault with the ruling under those circumstances.

Other cases cited by defendant are: Offutt v. Travelers Ins. Co., Mo.App., 437 S.W.2d 127; Greiser v. Western Supplies Co., Mo., 406 S.W.2d 13; Anderson v. Benson Mfg. Co., Mo., 338 S.W.2d 812; Bailey v. Morrison-Knudsen Co., Mo., 411 S.W.2d 178. We have read all of these cases, but they really add nothing to what has already been discussed. Certainly no one of them would justify a holding here that, as a matter of law, the plaintiff was a statutory employee of G-M. The facts in those cases much more clearly identified the alleged employees with the usual work of the defendants than do our facts.

 Our conclusion, as already indicated, is that defendant did not establish its defense that plaintiff was a statutory employee as a matter of law or by "unassailable evidence," and that the summary judgment in defendant's favor must be reversed. Rule 74.04(c) permits a summary judgment to be rendered against the moving party, when appropriate. We do not choose to do so here. It is seldom, if ever, that a court should direct a verdict for a plaintiff where the case depends upon oral evidence and plaintiff has the burden of proof (on at least some issues), Beezley v. Spiva, Mo., 313 S.W.2d 691, and the same rule may well be applied to a motion for summary judgment. We shall remand the case for trial. Upon a trial it is probable, or at least possible, that additional evidence may be produced on one or more of the material questions. It must be kept in mind that under § 287.040, supra, the "contract" requirement and also the requirement that plaintiff's operation was a part of the "usual business" of G-M, must

both be proved in order for defendant to establish the "statutory employee" defense. There is no doubt that the injury occurred on G-M's premises. Defendant may wish to ask leave to amend its answer in order to plead and present the "borrowed servant" defense.

The judgment is reversed and the cause is remanded for further proceedings as indicated in this opinion.

PER CURIAM.

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.