81 F.Supp.2d 956 (1999)
Gail E. MING, Plaintiff,
v.
GENERAL MOTORS CORPORATION, Defendant.
No. 4:98CV184 TIA.
United States District Court, E.D. Missouri, Eastern Division.
January 29, 1999.
*957 James P. Holloran, Holloran Law Firm, St. Louis, MO, Lance Callis, John T. Papa, Callis and Papa, Granite City, IL, for Gail E. Ming.
Stephen L. Beimdiek, Kevin L. Fritz, Lashly and Baer, P.C., St. Louis, MO, for General Motors Corp.

MEMORANDUM AND ORDER
ADELMAN, United States Magistrate Judge.
This matter is before the Court on defendant's Motion to Dismiss Plaintiff's Petition for Lack of Subject Matter Jurisdiction and/or Motion for Summary Judgment. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

Facts
At all times pertinent to this case, plaintiff was employed by Norfolk & Western Railway Company ("N & W"). N & W maintains a rail yard in Wentzville, Missouri and provides rail services to the defendant General Motors Corporation ("GM") Wentzville Assembly Plant by delivering new vehicle parts utilized to build new automobiles and by removing completed new vehicles for public sale. Plaintiff was assigned by her employer to do work as a railroad freight clerk in the offices of GM pursuant to an oral agreement between N & W and GM. (Def.Exh. A, ¶ 3; Def.Exh. B, ¶ 3; Def.Exh. C, pp. 10-11)
Plaintiff's duties were clerical in nature. Her desk was located in the Traffic Department at the GM plant. She worked with GM employees in the Traffic Department by aiding in the organization and coordination of the delivery of new parts to the plant and the movement of the finished products out of the plant. (Def.Exh. C, pp. 9, 11-13) Plaintiff additionally coordinated N & W's shipping of freight to and from other Wentzville District customers. (Ming Aff., ¶¶ 8-9) While at the GM plant, plaintiff's job duties included filing, typing, answering the phone, monitoring a video screen of the rail yard, and communicating with GM employees. (Def.Exh. C., p. 11; Def.Exh. A, ¶ 9; Def.Exh. B, ¶ 5) According to the Superintendent of the Material Department at the GM plant, while plaintiff's duties did not include the actual delivery of car parts or finished autos, plaintiff did perform work identical to that being performed by other GM employees who worked with her. (Def.Exh.A, ¶¶ 5, 10) The work performed by plaintiff was part of a daily routine on a regular and frequent schedule to be repeated over a relatively short span of time. (Def.Exh. C, p. 13; Def.Exh. A, ¶ 13; see also Ming Aff., ¶ 2 (plaintiff had been employed as a clerk at several locations over a five year period))
While plaintiff claims that the work she performed was not the regular work of GM but was the normal work that a railroad does in the process of delivering *958 freight to or receiving freight from a customer, it is undisputed that plaintiff dealt with bills of lading on behalf of GM. (Exh. C, pp. 13-14; Def.Exh. A, ¶ 8; Def.Exh. B, ¶ 7) The bills of lading contained information which showed which car parts were on what train cars and which finished automobiles were on what train cars. (Def.Exh. C, p. 14) The bills were records of defendant and were maintained in a filing cabinet containing only defendant's records.
Plaintiff's cause of action arises out of an injury allegedly sustained when the filing cabinet containing the bills of lading located in the Traffic Department fell on plaintiff. She filed a negligence action against GM in state court, which GM subsequently removed to federal court based on diversity jurisdiction. Defendant maintains that plaintiff is a statutory employee of GM at the time of the accident and that her claims against GM must be brought in the Missouri Workers' Compensation Administration. Plaintiff, on the other hand, disputes that she is a statutory employee, claiming instead that her work was solely for N & W and not defendant.

Discussion
Under the Missouri Revised Statutes:
Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.
Mo.Rev.Stat. § 287.040.1 (1994). The Missouri Supreme Court thoroughly re-examined this statute in Bass v. National Super Markets, Inc., 911 S.W.2d 617 (Mo. banc 1995). The Bass court articulated the three elements required for statutory employment: "(1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of business of the alleged statutory employer." Id. at 619-620 (citation omitted).
Plaintiff does not contest the first two elements. It is clear that there was an oral contract between N & W and GM for N & W employees to work with GM employees by performing various clerical services and record keeping functions regarding the transport and delivery of GM autos and auto parts. (Def.Exh. A, ¶ 3; Def. Exh. B, ¶ 3; Def.Exh. C, pp. 10-11) Additionally, there is no dispute that the injury occurred on GM premises. The only issue before the court is whether the work performed by plaintiff was in the usual course of business for GM. The undersigned finds that the work was in the usual course of GM's business and that plaintiff is a statutory employee. Thus, the court is without jurisdiction to entertain plaintiff's negligence suit.
In Bass, the Missouri Supreme Court defined "usual business" in Mo.Rev.Stat. § 287.040 as:
those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.
Bass, 911 S.W.2d at 621. See also Anders v. A.D. Jacobson, Inc., 972 S.W.2d 612, 613 (Mo.App.1998) (same). The Bass court further specified that "until directed by the legislature to embark on another course, courts must continue to give the Act a liberal reading, deciding close cases in favor of workers' compensation coverage." Id. at 621.
The only case relied upon by the plaintiff is Dunn v. General Motors Corp., 466 S.W.2d 700 (Mo.1971). In that case, plaintiff was employed by a transfer company to spot trailers of various carriers at one of *959 defendant's loading docks when he was involved in an accident. The Dunn court found that "plaintiff's work was a part of the carrier operation and not a part of GM's usual business of manufacturing or assembling cars." Id. at 705. Therefore, the court held that plaintiff was not a statutory employee because he was not engaged in an operation which was a part of GM's usual work. Id.
In the present case, plaintiff submits that because she was not involved in the assembly of cars but rather in clerical functions for N & W, she was not participating in the "usual business" of GM. Further, plaintiff maintains that GM's business is not processing a railroad's paperwork involved in the railroad's transportation of freight to and from customer's facilities.
Since the Dunn case, Missouri courts have frequently dealt with the issue of what constitutes a company's usual business. For example, in King v. American Tel. & Tel. Co., 848 S.W.2d 610 (Mo.App. 1993), an employee of ARA Food Services slipped and fell on a puddle that formed around a leaking ice machine in the AT & T cafeteria which AT & T owned. AT & T provided an affidavit by a company representative stating that it was part of the usual business of AT & T to provide food service. The plaintiff failed to counter this affidavit with other evidence. The court thus found that, absent evidence to the contrary, the operation of the food service was in the usual course of AT & T's business and that the negligence suit was properly dismissed. Id. at 611.
Here, while plaintiff presents her own affidavit disputing that she is a statutory employee, the record demonstrates that clerical work of the nature performed by plaintiff was in the usual business of defendant. The clerical work was routinely done on a daily basis during a regular and frequent schedule. In plaintiff's deposition, she states that she performed filing, typing, telephone duties, and video monitoring as part of a daily routine on a regular and frequent schedule. (Def.Exh. C, p. 13) Further, she stated that some of the paperwork was for the railroad's records; some was for GM's records; and both company's needed to keep track of the transportation information. (Def.Exh. C., pp. 13-14) In fact, the filing cabinet belonging to GM that fell on plaintiff was near her desk, and she used the cabinet almost on a daily basis. (Def.Exh. C, p. 15) In addition, the work performed by plaintiff was to be repeated over a relatively short span of time according to the oral contract. Plaintiff states in her affidavit that she had worked as a clerk for N & W at various locations for almost five years. (Ming Aff., ¶ 2)
Most, importantly, however, if there were no agreement with N & W, it is clear that defendant GM would have to hire permanent employees to coordinate the shipping and receiving of autos and auto parts via the railway. According the N & W trainmaster, Guy Nacello, yard clerks such as plaintiff at the GM plant communicated with the GM employees and ordered the railroad cars to be brought into the plant with materials required for automobile production as directed by GM employees. (Def.Exh.B, ¶ 5) Further, yard clerks worked with GM employees to organize and coordinate the delivery of car parts in the order directed by GM. (Def.Exh.B, ¶ 6) The yard clerks also helped maintain bills of lading which were GM's records and were maintained in a filing cabinet in the GM plant. (Def.Exh.B, ¶ 7) The coordination and organization of the trains and the car parts is an integral and necessary part of defendant's business, as is maintaining the bills of lading. Without someone performing plaintiff's function, the parts and autos could not be delivered to and from the plant in an orderly fashion, and the records of such transportation would be in disarray. If not a N & W employee, then a GM employee would have to complete these tasks to ensure efficient transport of the autos and parts. (Def.Exh.A, ¶ 14) Additionally, the freight charges paid by *960 defendant to N & W covers the wages of railway employees who perform plaintiff's functions at GM. (Def.Exh.A, ¶ 12)
Therefore, defendant has demonstrated that filing, typing, phone answering, monitoring of railroad cars, and ordering railroad cars to be brought to and from the GM plant is part of the usual business of GM. Plaintiff's affidavit, while disputing this fact, is self-serving and does not present credible evidence to the contrary. See O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir.1995) (plaintiff's reliance on own self-serving statements in affidavit, standing alone, are insufficient) The affidavits of the GM Superintendent-Material Department and the N & W Trainmaster both support the fact that the work performed by plaintiff was part of GM's usual business. (Def.Exh. A and B) In addition, plaintiff's own deposition demonstrates that she worked closely with GM employees and that the filing work consisted mostly of dealing with GM bills of lading containing information about which parts or autos were on what train cars contained in GM's filing cabinet. (Def.Exh. C, pp. 13-15)
Plaintiff, however, further contends that she cannot be a statutory employee because she also coordinated railroad service for other Wentzville area customers. Plaintiff presents no case law that exclusivity is a requirement for statutory employee status. Further, her affidavit states that 85% of the railroad cars delivered to Wentzville Yard from other N & W yards were destined for the GM plant in Wentzville. (Ming Aff., ¶ 7) It is apparent that plaintiff was assigned to the GM plant because the majority of the clerical work she did and the coordination of train cars pertained to defendant.
Finally, with regard to plaintiff's argument that a state court denial of the same motion now before this court should be given full faith and credit, plaintiff has not presented authority showing that a judgment which is not final has a binding effect on this court. See, e.g., Thomas v. St. Louis Bd. of Educ., 933 F.Supp. 817, 820 (E.D.Mo.1996) (stating that 28 U.S.C. § 1738 requires federal courts to give full faith and credit to final state court judgments). The order by the Circuit Court of St. Louis City was not a final judgment on the merits. Further, defendant maintains that the motion was made before plaintiff had admitted to the statutory employee elements in her deposition and shortly after the Missouri Supreme Court reexamined the statutory employee requirements in Bass. Absent evidence and authority indicating that this court is bound by the state court judge's ruling, the undersigned finds that plaintiff is a statutory employee and that the court is without jurisdiction to entertain plaintiff's negligence action. Plaintiff's remedy is under the Missouri worker's compensation laws. Therefore, the case will be dismissed.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction (# 28-1) is GRANTED.
IT IS FURTHER ORDERED that defendant's motion for summary judgment (# 28-2) is DENIED as MOOT.