# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1615

_____

| | | |
|---|---|---|
| Gail E. Ming, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri. |
| | * | |
| General Motors Corporation, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: September 15, 1999
Filed: November 1, 1999

_____

Before BEAM, HEANEY, and FAGG, Circuit Judges.

_____

PER CURIAM.

Having concluded Gail E. Ming was a statutory employee and the Missouri Workmen's Compensation Act was Ming's exclusive remedy, the district court dismissed Ming's personal injury action against General Motors Corporation for lack of jurisdiction. Ming appeals, and we affirm for the reasons stated by the district court in its thorough memorandum opinion. See 8th Cir. R. 47B.

HEANEY, Circuit Judge, dissenting.

In my view, the district court clearly erred in ruling as a matter of law that Ming was a statutory employee and in dismissing her suit against General Motors (GM) for lack of subject-matter jurisdiction. This ruling is justified only if the task performed at the moment of injury determines statutory employment status. However, Missouri law required the district court to evaluate the employee's duties as a whole, not just at the moment of injury. Because the district court failed to consider Ming's duties as a whole, we have no alternative but to remand the case to the district court for an evidentiary hearing to determine, using the standard set forth above, whether Ming was in fact a statutory employee.

To determine an employee's statutory employment status, Missouri law provides that:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

Mo. Rev. Stat. § 287.040(1) (1994).

In Bass v. National Super Markets, Inc., 911 S.W.2d 617, 619-20 (Mo. 1995) (en banc), the Missouri Supreme Court concluded that statutory employment exists under § 287.040(1) where: (1) the work is performed pursuant to a contract; (2) the injury occurs on or about the premises of the alleged statutory employer; and (3) the work is in the usual course of the alleged statutory employer's business. Activities done in the alleged employer's "usual business" include those that: (1) are routinely done; (2) are done on a regular and frequent schedule; (3) are contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short period of time; and (4) the performance of which would

-2-

require the statutory employer to hire permanent employees absent the agreement. <u>See</u> <u>id.</u> at 621.

Ming did not dispute that her work was performed pursuant to a contract between Norfolk & Western Railway (N&W) and General Motors (GM) and that her injury occurred on GM's premises. <u>See</u> <u>Ming v. General Motors Corp.</u>, Civ. File No. 4:98CV184 TIA, Mem. and Order at 3 (E.D. Mo. Jan. 29, 1999). The district court's analysis then turned on whether Ming's work was within GM's usual business. <u>See</u> <u>id.</u>

In finding that Ming's work was within GM's usual business, the district court determined that Ming's duties were clerical in nature and of the type performed by GM employees. <u>See</u> <u>id.</u> at 5. The district court further concluded that Ming's work was routinely done on a regular and frequent schedule and that because Ming had worked as a yard clerk for N&W at various locations over the past five years, her work was to be repeated over a relatively short span of time. <u>See</u> <u>id.</u> Lastly, the district court found it clear that without its agreement with N&W, GM would hire permanent employees to perform Ming's duties because "the coordination and organization of the trains and car parts is an integral and necessary part of defendant's business." <u>See</u> <u>id.</u> at 6.

The district court's ruling is without support. First, Ming's duties were not primarily clerical in nature. Rather, her primary duty was monitoring and coordinating the movement of rail cars to and from the Wentzville rail yard. (Ming Dep. at 9.) This duty was not limited to rail cars bound for and departing from GM. (<u>Id.</u>) In fact, at least fifteen percent of the rail cars Ming coordinated were bound for other N&W customers. (Ming Aff. at 2.) Although Ming performed clerical tasks, they were incidental to her duty of coordinating rail-car movement. For example, Ming filed bills

of lading[1] for both GM and N&W. (Ming Dep. at 11, 14.) Ming filed the bills of lading as part of N&W's shipping documentation process. (Ming Dep. at 14.) Because her office was in the GM plant, Ming apparently filed the bills of lading for GM out of convenience. (Ming Aff. at 3; Nasello Aff. at 2.) Ming also answered telephones. (Ming Dep. at 11.) The record reveals that Ming communicated with GM employees regarding the order in which car parts were to be brought into the plant. (Ming Dep. at 9.) Answering telephones apparently was associated with this aspect of her job.

Second, there is nothing in the record to support the district court's ruling as a matter of law that, absent the agreement between N&W and GM, GM would hire permanent employees to coordinate the movement of rail cars to and from the Wentzville rail yard. GM is in the business of manufacturing automobiles, not moving goods via rail car. (Kroll Aff. at 1.) Moreover, the record contains no information to support the argument that N&W would permit a GM employee to coordinate the movement of its rail cars to and from the Wentzville rail yard. Hence, Ming's work was not within GM's usual business.

The facts of this case are similar to those in <u>Dunn v. General Motors Corp.</u>, 466 S.W.2d 700 (Mo. 1971). Dunn was employed by a transfer company to move trailers for carriers who dropped them off at General Motors' plant. <u>See</u> <u>Dunn</u>, 466 S.W.2d at 701. After GM gave Dunn a list of the trailers to be brought into the plant, Dunn located the trailers and routed them to a dock indicated on the list. <u>See id.</u> Once unloaded, Dunn moved the trailers to a place where the carriers would retrieve them. <u>See id.</u> In addition, to his work for the carriers, Dunn performed some for-hire work for GM. <u>See id.</u> at 702.

---

[1]Bills of lading are documents listing and acknowledging the receipt of goods for shipment. <u>See</u> Webster's II New Riverside University Dictionary 173 (1994).

Dunn was injured on a GM loading dock and sued for his injuries. See id. at 701. GM claimed that Dunn was a statutory employee and thereby precluded by the Missouri Workers' Compensation Act from bringing his suit. See id. at 702. The court disagreed and held that Dunn was not a statutory employee because: (1) he took no part in the unloading of cargo for which GM employees were responsible; (2) the only direction Dunn got from GM was the list of the trailers to be brought into the plant; (3) Dunn was in all other respects under the control of his own employer; (4) the small amount of work that Dunn performed directly for GM was kept separate from his main work; and (5) the injury did not occur in the course of Dunn's for-hire work. See id. at 703.

Similar to Dunn, Ming routed rail cars to and from the rail yard, something that GM employees did not do. (Ming Aff. at 3-4.) Ming also worked with other GM employees in the Traffic Department to determine the order that GM wanted car parts brought into the plant. (Ming Dep. at 12.) In addition, Ming was under N&W's control in all other respects. Her office equipment was owned and maintained by N&W. (Ming Aff. at 3.) N&W provided Ming a computer and monitor that was connected to the N&W network. The computer was not connected to the GM network, and no GM employees had access to the computer. (Id.) N&W also provided a video monitoring system to allow Ming to monitor train and rail car movement at the Wentzville rail yard. (Id.) The system did not monitor movement within the GM plant, and no GM employees had access to the monitoring system. (Id.) Lastly, Ming was paid by and received her benefits from N&W. (Id. at 3-4.)

However, Ming was injured while retrieving a file from a GM file cabinet at the request of a GM employee, not while performing a task for N&W. (Compl. at 2.) Because such a task is also performed by GM employees, it may be argued that Ming was a statutory employee. See Dunn, 466 S.W.2d at 703. This argument yields a rule that makes the task performed at the moment of injury determinative of employment

status. There is no precedent for such a rule, and it is clearly contrary to the plain language and intent of the Missouri statute.

If the task performed at the moment of injury determines employment status, one's status would vary throughout the course of a day. A worker could be a statutory employee when performing one task, but not another. Rather than determining status based on the task being performed at the moment of injury, the statute requires that we evaluate the plaintiff's work as a whole to determine whether the work is within the defendant's usual business.

Viewing Ming's duties as a whole, her primary responsibility was coordinating the movement of rail cars to and from the Wentzville rail yard. Her clerical duties, including filing and retrieving bills of lading for GM, were incidental to this work.

Finally, GM argues that because courts have liberally construed Missouri's workers' compensation laws, coverage should be found here. (Appellee's Br. at 10-11.) I fail to see the relevance of this argument. The legislature passed § 287.040 "to prevent employers from circumventing the requirements of the [Workers' Compensation] Act by hiring independent contractors to perform work the employer would otherwise perform." See Bass, 911 S.W.2d at 619 (citing Walton v. U.S. Steel Corp., 362 S.W.2d 617, 622 (Mo. 1962) (en banc)). This policy is not at issue in this case. The record clearly indicates that Ming was an employee of N&W, not an independent contractor. (Ming Aff. at 1-2.) Indeed, she was covered by the Railroad Retirement and Disability Program. (Id.) Moreover, GM never offered, nor did Ming receive, any workers' compensation benefits. (Id. at 2.)

In conclusion, the district court erred in ruling as a matter of law that Ming was a statutory employee. The ruling is justified only if the task performed at the moment of injury determines statutory employment status. Because Missouri law required the district court to evaluate Ming's duties as a whole, not just at the moment of injury, the

case should be remanded for an evidentiary hearing to determine, using the standard set forth in this dissent, whether Ming was in fact a statutory employee.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.